196 So.2d 777 (1967)
Joseph H. WYATT, Clara J. Wyatt, Peter Paul Beiser and Dorothy M. Beiser, Appellants,
v.
The CITY OF PENSACOLA, a Municipal Corporation, Appellee.
No. I-133.
District Court of Appeal of Florida. First District.
March 28, 1967.
William H. Anderson, Pensacola, for appellants.
Henry R. Barksdale, Pensacola, for appellee.
RAWLS, Chief Judge.
Plaintiffs Wyatts and Belsers appeal a summary final decree holding that a portion of a section of the City of Pensacola Zoning Code dealing with dry cleaning establishments is void and unconstitutional.
Among the uses listed in the Zoning Code for C-1 Neighborhood Commercial Districts is the particular section involved in this cause, viz.:
"(13) Launderettes and dry cleaning establishments utilizing solvents rated as nonflammable or as nonflammable at ordinary temperatures and only moderately *778 flammable at higher temperatures. Dry cleaning establishments shall not be permitted in this classification until January 1, 1970."
Plaintiffs sought to have the last sentence of the quoted section stricken upon the theories that the purpose of same was not the promotion of health, safety, morals, or welfare of the public, and therefore, was not within the scope of the City's police power, and it deprived the plaintiffs of the right to a legal use of their property without due process. The chancellor struck all parts of the section pertaining to dry cleaning and decreed that the section would be as follows: "(13) Launderettes." By this appeal plaintiffs contend that the chancellor went too far and should have only deleted the unlawful part, that being the last sentence. After considering the undisputed evidence in this record, we are compelled to agree with plaintiffs' contentions, and reverse.
At the outset it is significant that the evidence presented to the chancellor did not in any manner relate to public health, safety and welfare of the inhabitants of the City of Pensacola. On the contrary the minutes of the City Council meeting held February 25, 1965, to consider the passage of the zoning ordinance reflect that the councilmen agreed that C-1 zones were the ideal location for dry cleaning establishments using the type solvents described in the quoted section; that such businesses were not dangerous then (1965); and that allowing such businesses to locate in C-1 zones would provide a better service to the public, but immediate location of such businesses in those zones would put the present dry cleaning establishments at an undue disadvantage. The primary point of controversy at this meeting was the effective date for the dry cleaning provision which in the draft before the council at that time was January 1, 1968. One councilman stated, "The idea is to give us a grace period where people can adjust themselves to new competition, and this is the reason why this three years was put in. It was not unanimous on the zoning committee. In fact I think one person wanted more; one person wanted five and one person wanted to put it in immediately and it was more or less of a compromise that it should take a certain amount of time." Another councilman concluded "* * * the only question is whether or not it should be made at once, or whether or not it should be given a reasonable amount of time."
The vote on the ordinance was delayed until the next meeting. On March 25, 1965, one of the councilmen wrote a memo to all other members stating:
"It is my intention to make a motion that the revised Zoning Ordinance be passed with substitution of the date January 1, 1970, in lieu of January 1, 1968, in Section 7, subsection (a), line (13). This will, I believe, satisfy both opposing factions on this issue.
"We will not be put in the position of `legislating against progress' nor will we be putting the established cleaning firms at a competitive disadvantage without sufficient warning."
The subject section was subsequently passed by the Commission with the portion applying to dry cleaning made effective January 1, 1970.
With the foregoing facts before us, we review the chancellor's decree which stated:
"3. The minutes of the regular meeting of the City Council held February 25, 1965, prior to enactment of the new Zoning Code, disclose that Sub-section 13 of Section 38.14 as it pertains to dry cleaning establishments is not founded upon any purpose of promoting the health, safety, morals or the general welfare of the community.
"4. It cannot be ascertained whether the City Council would have permitted dry cleaning establishments in C-1 Districts without the qualification set forth in the last sentence of Sub-section 13; however, *779 launderettes were permitted under the prior Zoning Code, and the provision of Sub-section 13 pertaining to launderettes is severable.
* * * * * *
"It is therefore ORDERED AND ADJUDGED that the following provision of Section 38.14 of the Code of Ordinances of the City of Pensacola is hereby declared to be unconstitutional, null and void:
`(13) * * * and dry cleaning establishments utilizing solvents rated as nonflammable or as nonflammable at ordinary temperatures and only moderately flammable at higher temperatures. Dry cleaning establishments shall not be permitted in this classification until January 1, 1970.'
and said sub-section of said ordinance shall hereafter read as follows:
`(13) Launderettes.'
and it is further ORDERED AND ADJUDGED that dry cleaning establishments shall not be permitted in C-1 Neighborhood Commercial Districts unless and until the Council of the City of Pensacola, within its sound legislative discretion, determines otherwise by appropriate ordinance."
That portion of the chancellor's decree finding "* * * dry cleaning establishments shall not be permitted in C-1 Neighborhood Commercial Districts unless and until the Council of the City of Pensacola, within its sound legislative discretion, determines otherwise * * *" is wholly without foundation. The Council of the City of Pensacola within its sound legislative discretion found that Zone C-1 was the proper location for the operation of:
"* * * dry cleaning establishments utilizing solvents rated as nonflammable or as nonflammable at ordinary temperatures and only moderately flammable at higher temperatures."
Such legislative finding is supported by this record. It is equally clear that the last sentence of said section "* * * dry cleaning establishments shall not be permitted in this classification until January 1, 1970" is not founded upon any purpose relating to the promotion of health, safety, morals or general welfare. This sentence is clearly severable and the chancellor erred by not so holding.
The chancellor stated in his final decree that, "* * * It cannot be ascertained whether the City Council would have permitted dry cleaning establishments in C-1 Districts without the qualification set forth in the last sentence. * * *" According to this record, the sole basis for the sentence delaying the effective date until 1970 was economical  that is, to restrict competition in this industry through the use of the police power. Municipalities may not use their zoning powers for this purpose.[1] The late Judge Sturgis of this Court concisely stated the principle controlling here in Abdo v. City of Daytona,[2] wherein he stated:
"The fact is that the credible evidence in this cause and the conclusions thereon as stated by the chancellor reflect that the sole basis for invocation of the police power in the manner provided by the ordinance rests on economic impact * * * rather than upon any aesthetic consideration. When economic impact standing alone becomes a sufficient basis for such discriminatory legislation it will mark the extinction of the last vestige of the economic system under which this government operates."
The sentence postponing the effective date of the provision is a tumor upon an otherwise healthy ordinance; rather than striking the entire ordinance, the chancellor *780 should have used his judicial scalpel and severed the tumor.
Reversed.
CARROLL, DONALD K., and JOHNSON, JJ., concur.
NOTES
[1] See Section 176.04, Florida Statutes, F.S.A.
[2] Abdo v. City of Daytona Beach, 147 So.2d 598 (Fla.App. 1st, 1962).