NEUMAN, ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE, ET AL.

[No. 334, September Term, 1967.]

*Decided October 9, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SMITH, JJ.

*Melvin J. Sykes* for appellants.

*Paul A. Dorf,* with whom were *Dorf, Pollack & Cahn* on the brief, for Dr. Richard Weinberger, one of appellees.

*Simon Schonfield, Assistant City Solicitor,* with whom was *George L. Russell, Jr., City Solicitor,* on the brief, for Mayor and City Council of Baltimore, other appellee.

HAMMOND, C. J., delivered the opinion of the Court.

This appeal is by home owners living on Ford's Lane, a street of two long blocks between Park Heights Avenue and Reisterstown Road, on which are a number of substantial and expensive homes, the Har Sinai Temple, and eight apartment houses, five small and three large, containing some 230 apartments, from the affirmance by the Baltimore City Court of an order of the Board of Municipal and Zoning Appeals allowing Dr. Richard Weinberger, a general practitioner of medicine, to occupy and use, as a non-resident doctor, an office in one of the large apartment houses, the Fountainview, which has 86 units.

The appellants describe Ford's Lane as "a quality residential street" which is "richly lined with trees, shrubs and foliage" and "an 'oasis' between the more developed uses on Park Heights Avenue and the commercial strip on Reisterstown Road." Their objections to having a non-resident doctor's office in the Fountainview, which they describe as "a modern attractively designed building," are essentially that it would increase traffic and lower the dignity of the street. They suggest that the doctor should find

an office on a less dignified street such as Park Heights Avenue or Reisterstown Road, as have many other doctors.

It appears from the record before the Board, which by stipulation was the record on appeal to the Baltimore City Court, that a Dr. Levin, also a general practitioner, had practiced for some time from the Fountainview. As Dr. Levin was a resident of the apartment house, he was allowed to have an office there as an accessory use under the zoning laws. Subsequently he brought Dr. Weinberger in to share his office space. It is not clear whether they were associated as practitioners or merely shared a common waiting room and X-ray room but, in any event, Dr. Levin soon moved and Dr. Weinberger stayed on and at the time of the hearing had been in the Fountainview office for two years. Dr. Weinberger is associated with Sinai and University Hospitals. Mr. Melvin Sykes, a home owner on Ford's Lane and counsel for the appellants, made a statement to the Board in which he said:

> "I have walked up and down Park Heights and Reisterstown and there are a substantial number of doctors offices there, and I think that anybody who needs medical attention can very easily get it within the immediate neighborhood. I understand that Dr. Weinberger's practice is not very extensive, but I have no knowledge as to how close the people come from, except I see automobiles actively coming in and out from in front of his office."

Morris Sugarman, one of the owners of the Fountainview, testified without objection that Dr. Weinberger "is a general practitioner and I would say 95% of his practice is in the immediate area." On cross-examination, he said that on several prior occasions he and Dr. Weinberger had come down to scheduled hearings before the Board, which had been postponed, and that he and the doctor on these occasions had discussed where the doctor's patients lived, and this was the basis of his statement that 95% of them lived in the area. He also said Dr. Weinberger "couldn't make it [the hearing] today."

The Board said and held:

> "Under the provisions of Section 16 [of the zoning

ordinance], the Board may permit the office of a non-resident physician where a need is established.

"The testimony shows that Dr. Richard Weinberger has been using the portion designated above for approximately two years as a doctor's office, formerly in association with a resident doctor, a Dr. Levin. The purpose of this appeal is to allow Dr. Weinberger the use of the premises as a physician. The testimony further reveals that Dr. Weinberger is in the general practice of medicine and is associated with Sinai and University Hospitals and that approximately 95 percent of his practice are patients in this area. * * *

"The Board is of the opinion that there is a need for Dr. Weinberger in this area and that the continued use of the premises by him would not be detrimental to the health, safety or welfare of the community nor would it have an adverse effect upon the neighborhood. The Board further finds it would be a hardship to deny the appeal."

Baltimore City has shown an increasingly liberal attitude in allowing professional offices in residential districts and now under Baltimore City Code (1966), Art. 30, § 12, permits as of right an office in the bona fide residence of a "professional person" as an accessory use. Section 16 of the zoning ordinance deals, inter alia, with the conditions under which a "special exception" for the office of a non-resident doctor may be granted in a residential use district. The Board is to act as a fact finding body and is to determine whether or not the granting of the exception "will menace the public health, safety, security or morals and as a further guide to its decision * * * shall give consideration [among other factors] to the following:

"(1) The population density in the area in the vicinity of the premises for which application for a Special Exception under the provisions of this section is made indicating a need for the services of a physician or of a dentist, as the case may be, in such area.

"(2) The testimony of property owners in the area in the vicinity of the premises indicating a need for

the services of a physician or of a dentist, as the case may be, or the absence of testimony of such property owners that there is no such need."

The appellants argue earnestly that the decision of the Board is unsupported by substantial evidence because the only proof of need rests on the hearsay testimony of Mr. Sugarman and because, even if that testimony had been given by Dr. Weinberger, it was so vague and indefinite as to make the Board's decision, based thereon, arbitrary and capricious. They do not argue that the Board could not reasonably have found that the continued use of the Fountainview office by Dr. Weinberger would "not be detrimental to the health, safety or welfare of the community" although they deny in passing the finding that it would be a hardship to deny Dr. Weinberger the use of the office.

Appellants' earnestness in supporting these contentions leads them to try to build this routine proceeding into a great case. They say this Court has pointed out that the objectivity and impartiality of zoning boards should, like Caesar's wife, be above suspicion. They then immediately reveal that they think zoning boards have not always met this high standard, saying:

"This Court cannot be blind to the fact that all too often administrative 'expertise' urged as a basis for affirmance of zoning decisions on appeal consists of a modicum of experience and judgment mixed with a preponderance of politics or pelf,"

and that we have tried to walk a tightrope in order to balance the need for keeping the zoning process fair and the need to keep from being flooded by full judicial reviews of administrative fact finding in a multitude of cases. Looking through a glass darkly, they envision complete and sinister deterioration of the zoning processes if they lose their appeal, suggesting to us:

"To permit a zoning board to grant a special exception on hearsay testimony in a case like the instant case would destroy this balance. It would be an open invitation to the worst kind of abuse and would end any

> hope of effective judicial supervision of the integrity
> and fairness of the zoning process."

Our answer is that each zoning case, as those before have been, will be decided on its own record and its own merits and to paraphrase Mr. Justice Holmes, the fears of appellants that chaos in the law of zoning will follow their loss of this appeal will not materialize while this Court sits. It may be added that the appellants have produced no proof and we have found no hint that politics or pelf played any part in the decision of the case before us and that in our view the Board fairly and effectively exercised its judgment and experience in full accord with the facts and full compliance with governing law and legal principles.

The Baltimore City Charter (1964 Rev.), Art. VII, § 100, provides that the Board "shall not be bound by the technical rules of evidence in force in the Courts of Maryland" and this provision is declaratory since this would be true without the legislation. *Hyson v. Montgomery County Council,* 242 Md. 55 at 70, and *Dal Maso v. Board,* 238 Md. 333 at 337 ("In general, administrative agencies are not bound by the technical common law rules of evidence, but they must observe the basic rules of fairness as to parties appearing before them"); hearsay evidence is generally admissible in administrative proceedings in contested cases. 2 Am. Jur. 2d *Administrative Law* § 382; 73 C.J.S. *Public Administrative Bodies* § 125. Hearsay evidence is not only admissible, it may serve as the sole basis for decision if it is credible and has sufficient probative force. *Standard Oil Co. v. Mealey,* 147 Md. 249; *Commercial Transfer v. Quasny,* 245 Md. 572.

The Industrial Accident Commission in *Mealey* had relied on hearsay testimony that the deceased workman had fallen and struck his side on a wagon at a spot where his fatal malignant growth later developed, and this Court held it proper for the trial court to have admitted the testimony of various witnesses that the deceased had so told them as a basis for decision by the jury, saying:

> "The statements are reproduced by three or four witnesses who heard them at first hand from the work-

man. They refer to a simple fact, and were such as to leave no room for substantial misunderstanding, and it seems to us basing a finding of fact on them is, after all, hardly any greater relaxation of wise caution than has long been made in the admission of secondary evidence to establish the contents of a writing which cannot be produced. We hold, therefore, that there was no reversible error either in the admission of the evidence or in the refusal of the prayer directing a verdict for the defendant because of insufficient evidence to support the finding of fact; * * *." [147 Md. at 255]

See also Bethlehem Steel Co. v. Traylor, 158 Md. 116; Waddell George's Creek Coal Co. v. Chisholm, 163 Md. 49; Horn Ice Cream Co. v. Yost, 164 Md. 24; Spence v. Bethlehem Steel Co., 173 Md. 539; and Commercial Transfer v. Quasny, supra.

In the present case Sugarman's testimony bore the indicia of reliability. Dr. Weinberger had told the asserted facts to him several times in connection with the matter in controversy before the Board. The doctor's statement was simple and direct and not likely to have been misunderstood by the hearer. It was not contradicted by the testimony of the protestants. We think that reasonably prudent men in the conduct of their affairs reasonably could, and would, take the view that Sugarman's challenged testimony had probative value.

We do not agree with appellants' argument that the testimony would lack probative value even if Dr. Weinberger had made it from the stand because the need it purports to establish and the area to which it refers were not defined, and need was not otherwise shown. The first standard as to need to be considered by the Board under § 16 of the zoning ordinance is the population density in the vicinity of the premises in which an office is sought as "indicating the need for the services of a physician * * *." We have said that the term neighborhood in zoning law is a flexible and relative term which may vary from case to case. Woodlawn Area Citizens Ass'n v. Board, 241 Md. 187. Vicinity as used in § 16 must also be a flexible and relative term. Need for the services of a physician likewise must be considered as elastic and relative. Clearly, it does not mean abso-

lute necessity. Need has been judicially held to mean "expedient, reasonably convenient and useful to the public * * *." *Baltis v. Village of Westchester* (Ill.) 121 N. E. 2d 495, 503; *accord, Baltimore City v. C. & P. Telephone Co.*, 92 Md. 692 at 700-701; *Illinois Bell Telephone Co. v. Fox* (Ill.), 85 N. E. 2d 43 at 51. There was enough before the Board, in addition to Sugarman's testimony, to show a population density within a reasonable distance of the Fountainview apartments intense enough to make it expedient, reasonably convenient and useful to the public that a doctor practice from an office there located, particularly since Dr. Weinberger had in fact conducted an active practice from that office for two years.

The Board did not err in finding that the evidence before it warranted the granting of the special exception, *Snowden v. Mayor & C. C. of Balto.*, 224 Md. 443, 447-448; *Oursler v. Board of Zoning Appeals of Baltimore County*, 204 Md. 397, 405; and we will affirm the order of the Baltimore City Court affirming its action.

*Order affirmed, with costs.*