SPRINGLOCH AREA CITIZENS GROUP, et al.
*v.* MONTGOMERY COUNTY BOARD
OF APPEALS, et al.

[No. 134, September Term, 1968.]

718

*Decided March 24, 1969.*

[black redaction bars]

The cause was argued before HAMMOND, C. J., and MAR-BURY, McWILLIAMS, FINAN and SINGLEY, JJ.

*Alfred L. Scanlon,* with whom were *Shea & Gardner* on the brief, for appellants.

*Stanley D. Abrams, Assistant County Attorney,* with whom were *David L. Cahoon* and *Alfred H. Carter, County Attorney* and *Deputy County Attorney,* on the brief, for Montgomery County Board of Appeals, part of appellees.

*C. Edward Nicholson* for William Cohen and Town and Country Day School and Camp, other appellees.

FINAN, J., delivered the opinion of the Court.

On May 6, 1968, the Circuit Court for Montgomery County affirmed a decision of the Montgomery County Board of Appeals (Board) dated July 11, 1967. The Board (3 members in favor, 1 dissenting and one absent) had approved a special exception, under sections 111-35 and 111-37 m-1(c) (5) of the Zoning Ordinance for Montgomery County (Ch. 111, Mont. Co. Code 1965), for the operation of a private educational institution and summer day camp for 175 students, to be located

in a residential neighborhood. The two individual appellants, John J. Kern and Ray W. Harrold, own residential properties which adjoin the site of the proposed school and camp and were parties to the proceedings before the Board and the trial court. Appellant, the Springloch Area Citizens Group, is an association, the members of which own private homes which adjoin, or are in close proximity to the subject site.

The Town & Country Day School has been located on a 6.8 acre tract at 11400 Viers Mill Road, Silver Spring, Maryland since 1958. It is an area zoned for single family homes (R-60) but it is adjacent to a rather large commercial complex. The school is a private, non-profit, non-denominational, educational institution serving approximately 300 students ranging in age from 3 years to 13 years. The school program runs from 9:30 A.M. to 4:00 P.M. but there is a before and after hours care program for 10-15% of those students whose parents request it. The school also runs a camp in the summer for about the same number of students as attend during the regular school year. The school owns 13 buses varying in size from 24 to 36 passengers, which when not in use, are parked on the school site.

The school sought to move their base of operation from their present location to a proposed smaller, more centralized 2.5 acre residential site in the Springloch area south of Randolph Road in the eastern part of Montgomery County. The site lies in an R-R (half acre minimum) Zone where the average house is valued at $40,500. Springloch Road, over which all traffic to and from the school would have to pass, is 20 feet wide with turf shoulders.

The factors necessitating the move to the proposed location were set forth at the Board hearing by the headmaster, Mr. William Cohen, owner of the property on which the school is presently located and owner of the property which is the subject of the special exception.

Mr. Cohen testified that the present location had become so commercialized as to be no longer desirable for school use, whereas, the landscaping, buildings, and character of the proposed site was the ideal atmosphere for a private school. He stated that because of the demand for and the high ratio of private school attendance in Montgomery County there was a gen-

eral need for private schools. More specifically he testified there was a need for such a school in the area of the proposed site because 195 of the school's then 300 students lived within a five mile radius of the new location. He also testified that the trend in registration and population movement in the county was to the area of the proposed site, particularly the higher income families which comprise the basic market for private schools and lastly that the eastern section of Montgomery County, where the site is located, is lacking in private educational facilities as compared to the western sections of Bethesda-Potomac. Mr. Cohen indicated to the Board his willingness to operate the school at the new site with an enrollment of 200 students instead of the 300, who were then attending the Viers Mill Road location.

Appellants on cross-examination of Mr. Cohen attempted to introduce evidence to show that the present school is located in an R-60 zone and that Mr. Cohen was unsuccessful in attempting to secure rezoning of that land to R-H (high rise). The Board refused to allow appellants to question Mr. Cohen concerning the alleged rezoning attempt and later in the hearing appellants were not permitted to introduce as an exhibit an opinion of the County Council dealing with the alleged rezoning attempt. The Board in both instances ruled that the evidence was irrelevant.

The school also presented at the hearing evidence by way of expert testimony, that there would be a negligible increase of traffic by the use of the proposed site and that the traffic pattern presented was feasible from an engineering standpoint. This evidence was countered by appellants' witness, Mr. John Kern, a resident of the neighborhood, who from his own personal observations of traffic, expressed concern for the safety of children near the site. Mr. Alton Heyser, a civil engineer, also testified for the appellants that he felt the entrance and driveway plan for the school was inadequate and hazardous.

The hearings lasted two days and on July 11, 1967, the Board filed an opinion granting the school's petition for a special exception subject to a number of conditions which limited the scope of the use. Of the conditions attached to the granting of the exception the most notable were: (1) that enrollment be lim-

ited to a maximum of 175 children, (2) that no more than 3 school buses be used, (3) that the before and after school day care services be discontinued, and (4) that the entrance to the school be located according to a certain exhibit in the file known as No. 13.

A motion for reconsideration of the Board's decision was made and denied and appellants then filed an appeal to the Circuit Court for Montgomery County. On May 6, 1968, the trial court filed an opinion and order affirming all aspects of the Board's proceedings and decision.

The appellants appeal from that ruling claiming, as they did below, that the decision of the Board was unlawful, arbitrary and capricious, in that: (1) there was no substantial evidence to support the Board's finding that there was a need for the school. and (2) there was a prejudicial curtailment of the appellants' right of cross-examination in the proceeding before the Board. The appellant had raised the questions in the lower court regarding an alleged departure of the Board from its own rules of procedure, in granting the special exception and also had urged that the proposed use would constitute a nuisance because of traffic problems it would generate. However, the appellant, and we believe judiciously so, did not press these last mentioned issues on appeal. Accordingly, we shall limit our discussion to the two issues enumerated above.

The question we must first decide is whether the Board of Appeals had before it substantial evidence which would support its finding that the application of the school for a special exception to operate a private school in a residential area came within the framework of Section 111-35 of the Montgomery County Zoning Ordinance.[1] We think that it did.

---

1. Section 111-35 of the Zoning Ordinance for Montgomery County (Ch. 111, Mont. Co. Code 1965) provides that the finding of the Board must be "from a preponderance of evidence." This means there must be substantial evidence to support the Board's finding. See *Clark v. County Board of Appeals for Montgomery County,* 235 Md. 320, 323, 201 A. 2d 499 (1964). In *Board of Zoning Appeals of Howard County v. Meyer,* 207 Md. 389, 114 A. 2d 626 (1955) this Court stated: "* * * However, it is only where the record is devoid of substantial evidence to sustain the finding that the Court is justified in declaring the action of the Board arbitrary

The pertinent parts of Section 111-35, which were in effect at the time of the filing of the application, the hearing before the Board and the lower court, provide:

"a. A special exception may be granted when the Board, or the Director, as the case may be, finds from a preponderance of the evidence produced at the hearing that:

(1) The proposed use does not affect adversely the General Plan for the physical development of the District, as embodied in this Ordinance and in any Master Plan or portion thereof adopted by the Commission; and

(2) The proposed use will not affect adversely the health and safety of residents or workers in the area and will not be detrimental to the use or development of adjacent properties or the general neighborhood; and

(3) The standards set forth for each particular use for which a special exception may be granted have been met.

\* \* \*

(4) With respect to uses of a commercial or professional nature other than home occupations, a clear and *present need exists in the general neighborhood* for the proposed use at the time of the application; in determining the existence of such need, the Board shall consider the availability of land, space, and facilities in the general neighborhood where the proposed use is a present (permitted) use at the time of the application."

It must be noted that subsequent to the circuit court's decision in this case the Montgomery County Council, after being advised by the Board of Appeals and the County Attorney that Section 111-35 was ambiguous and difficult to construe, adopted

_____

and discriminatory. *Heath v. Mayor and City of Baltimore,* 187 Md. 296, 304, 49 A. 2d 799; *Oursler v. Board of Zoning Appeals of Baltimore County,* 204 Md. 397, 405, 104 A. 2d 568; *Offutt v. Board of Zoning Appeals of Baltimore County,* 204 Md. 551, 562, 105 A. 2d 219." *Id.* at 401.

Ordinance No. 6-97 on June 18, 1968, which repealed Section 111-35 of Ch. 111 of the Montgomery County Code. The effect of this was to delete the language that an applicant for a special exception be required to show that a clear and present need exists in the general neighborhood for the proposed use. However, while in the process of writing this opinion the Court learned that the Montgomery County Council, by Ordinance No. 6-137 passed January 14, 1969, has again amended Section 111-35 and, in Section 111-36, restored the requirement that a need for the special exception be shown by a preponderance of evidence.[2]

On the authority of *Mandel v. Board of County Commissioners of Howard County,* 238 Md. 208, 208 A. 2d 710 (1965); *Yorkdale Corporation v. Powell,* 237 Md. 121, 205 A. 2d 269 (1964); *Grau v. Board of Zoning Appeals,* 210 Md. 19, 122 A. 2d 824 (1956), this Court is bound to decide a zoning case according to the laws existing at the time the decision is rendered unless vested rights have intervened and none have in this case.

Although special exceptions are to be granted judiciously (*Easter v. Mayor & City Council of Baltimore,* 195 Md. 395, 399, 400, 73 A. 2d 491 (1950)), the question of whether or not a need must be demonstrated for the granting of a special exception depends upon the language of the particular statute or ordinance involved. In *Montgomery County v. Merlands Club,* 202 Md. 279, 96 A. 2d 261 (1953), we pointed out that

---

2. "Section 111-36 County Board of Appeals—Special Provisions

\* \* \*

"g. In addition to the findings required in Section 111-35 and 111-37 the following special exceptions may be granted when the Board or Director, as the case may be, finds from a preponderance of the evidence of record that for the public convenience and service a need exists for the proposed use due to an insufficient number of similar uses presently available to serve existing population concentrations in the County, and that the use at the location proposed will not result in a multiplicity or saturation of similar uses in the same general neighborhood of the proposed use.

(1) Educational institutions, private.

\* \* \*."

the applicant for a special exception need only show "that it [the use] would be in general harmony with the zoning plan and would not adversely affect the neighborhood properties and the general neighborhood. * * *." *Id.* at 290. In that case the ordinance then in effect did not expressly require a showing of need.

In the instant case not only did the appellee demonstrate that the special exception if granted would not adversely affect the neighborhood and that it would be in harmony with it, but in addition we think the appellees presented substantial evidence of a need for the school at the proposed site and that the Board did not abuse its discretion in granting the special exception. The testimony of Mr. Cohen, headmaster of the school, although leaving a lot to be desired, was virtually uncontradicted on the point of need. The protestants leveled their attack on the element of "need" by endeavoring to show that there was a greater need for the School at the present site than at the new location. However, Judge Mathias, in the lower court gave a succinct and comprehensive summary on the question of "need" in context with the evidence and issues, upon which we do not think we can improve, stating:

> "As confusing and contradictory as Mr. Cohen's testimony was, we cannot say that there was no substantial evidence of a clear and present need in the neighborhood of the proposed site. The test is not that the need at the proposed site be greater than at the existing location, nor that the proposed site would serve the needs of the general neighborhood as well or better than the existing site. The test is simply whether or not there is a clear and present need in the neighborhood of the proposed site, and we think there was evidence on this point from which the Board could reasonably have concluded that such a need existed."

The connotation to be given the term "need," with reference to its application to a special exception in a zoning case, has been lucidly discussed in an opinion of this Court written by Chief Judge Hammond, in the recent case of *Neuman v. City of Baltimore*, 251 Md. 92, 246 A. 2d 583 (1968), wherein the

need for a special exception for a physician's office in a residential area was under attack, the Court stated:

> "* * * Need for the services of a physician likewise must be considered as elastic and relative. Clearly, it does not mean absolute necessity. Need has been judicially held to mean 'expedient, reasonably convenient and useful to the public * * *.' *Baltis v. Village of Westchester* (Ill.), 121 N.E.2d 495, 503; *accord, Baltimore City v. C. & P. Telephone Co.,* 92 Md. 692 at 700-701; *Illinois Bell Telephone Co. v. Fox,* (Ill.), 85 N.E.2d 43 at 51. * * *." *Id.* at 98-99.

The remaining issue to be disposed of is the appellants' contention that there was a prejudicial curtailment of their right of cross-examination in the proceedings before the Board. We find nothing in the record which justifies such a conclusion.

It must be borne in mind that the right of cross-examination was not withheld in this case, as was the situation in *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966) (a case wherein present counsel for appellants persuaded us that his client by such action had been denied due process), and *Bryniarski v. Montgomery County Board of Appeals,* 247 Md. 137, 230 A. 2d 289 (1967). Indeed in the case at bar the appellants' attorney extensively cross-examined the appellee Mr. Cohen, asking him some 136 questions covering some 34 pages of transcript. What the appellants are actually complaining about is, that they were denied by the Board the right to continue pressing cross-examination on an irrelevant point namely, the efforts of appellee Cohen several years previously, to have the present site of the School rezoned R-H; this was hardly prejudicial error. We think the Board's limitation on the appellants' cross-examination came well within the holding of *Neuman v. City of Baltimore, supra,* at 97; *Gibson v. Talbot County,* 250 Md. 292, 297; 242 A. 2d 137 (1968); *Hyson, et al. v. Montgomery County Council,* 242 Md. 55, 70, 217 A. 2d 578 (1966), and *Dal Maso v. Board,* 238 Md. 333, 337, 209 A. 2d 62 (1965), in that a fair and reasonable cross-examination was permitted.

*Order affirmed, appellants to pay costs.*