## ASPEN HILL VENTURE *v.* MONTGOMERY COUNTY COUNCIL

[No. 288, September Term, 1971.]

*Decided April 10, 1972.*

*Motion for rehearing filed May 9, 1972; denied May 16, 1972.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Joseph P. Blocher* and *Charles G. Dalrymple,* with whom were *Linowes & Blocher* on the brief, for appellant.

*William J. Chen, Jr., Assistant County Attorney,* with whom were *Richard S. McKernon, Acting County Attorney, Alfred H. Carter, Deputy County Attorney,* and *John B. Walsh, Jr., Assistant County Attorney,* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

The appellant in this zoning appeal, Aspen Hill Venture (Aspen), in 1961, acquired some 15.5 acres of land zoned R-60 (One Family, Detached, Residential) located in Montgomery County, Maryland on which they planned the construction of the Aspen Hill Shopping Center (Center). The plan of construction necessitated the rezoning of approximately 8 of the original 15.5 acres to commercial use, on which the first phase of the Center was developed. In 1968, the remainder of the original acreage was paved and devoted to parking use pursuant to a special exception granted by the Montgomery County Board of Zoning Appeals. In order to accommodate a 30,000 square foot expansion of the Center, Aspen, on June 1, 1970, filed a zoning application with the District Council seeking the reclassification of the remainder of the 15.5 acres from R-60 to C-1 (Local Commercial). At a public hearing before the Hearing Examiner, Aspen reduced the area sought to be reclassified to 4.1041 acres, and it is this parcel (the subject property) with which we are concerned on appeal.

The location of the subject property and the nature of

the surrounding property are accurately set forth in
the following description from the appellee's brief:

"* * * The subject property is part of * * *
Wheaton Woods, located at Aspen Hill, on the
easterly side of Connecticut Avenue (Maryland
Route 183), approximately 700 feet south of the
intersection of Connecticut Avenue and Aspen
Hill Road, in Wheaton, Maryland, and lies with-
in that area of Montgomery County designated
as the Aspen Hill and Vicinity Planning Area,
and west of Georgia Avenue. The subject prop-
erty * * * lies immediately south of and con-
tiguous with the existing Aspen Hill Shopping
Center, a local shopping center originally con-
structed about 1961, with subsequent additions
thereto, abutting Aspen Hill Road, a four-lane,
divided, arterial highway. To the east and South-
east of the subject property is a large area of
single-family homes, zoned R-60, known as the
Harmony Hills subdivision. The western bound-
ary is Connecticut Avenue, a six-lane, divided,
major highway with * * * [a] median strip
and access to the property. Bounding Connect-
icut Avenue on its western edge is the Wheaton
Woods subdivision of single-family homes zoned
R-60."

In augmentation of this description, we would note that
all of the quadrants at the intersection of Aspen Hill
Road and Connecticut Avenue are currently zoned and
occupied by a variety of commercial uses.

Upon completion of the public hearing before the
Hearing Examiner [1] a report and recommendation was
given to the District Council setting forth the findings
of fact that; (1) there was sufficient change in the char-

---

1. Section 111-46 A of the Montgomery County Code (1965),
adopted June 13, 1967, provides for the appointment of Hearing
Examiners to conduct public hearings in accordance with section
111-47 and to render written reports thereon.

acter of the neighborhood to justify rezoning, (2) the proposed reclassification was in accordance with "the recently adopted Aspen Hill and Vicinity Master Plan," and (3) the proposed reclassification would not have an adverse effect upon the surrounding residential property or create traffic circulation problems or an additional nuisance factor in the area. Nevertheless, the Hearing Examiner's report and recommendation advised the District Council to deny Aspen's application, as it "would not be in the public interest in light of a demonstrated lack of public need for additional commercial facilities at the subject site to service residents of the area."

On May 4, 1971, the District Council, after consideration of the appellant's application, rendered a written opinion in which it confirmed the Hearing Examiner's assessment of a substantial change in the character of the neighborhood and its effect on the surrounding area. The opinion further recognized the conformity of the proposed use with the Master Plan but proceeded to delimit this usually felicitous circumstance by stating:

> "The subject application is in accord with the land use designation recommended for the property on the recently adopted Aspen Hill and Vicinity Master Plan (approved by the District Council on December 3, 1970). The District Council recognizes that Master Plans are guides for its utilization in specified areas, sometimes long range guides, and therefore making hasty implementation of their recommendations in a piecemeal fashion (for the sake of conformity with the plan) may well be action to the detriment of the public interest."

In view of the favorable findings of the District Council on the issues of change, effect on surrounding properties and conformity with the Master Plan, all of with which the appellant agrees, we do not deem it necessary to review the testimony adduced at the public hearing relative to these determinations. It suffices to say, that de-

spite these elements favorable to Aspen, the District Council followed the recommendations of the Hearing Examiner and in concluding that Aspen's application should be denied, stated:

"The evidence of record includes studies by the Technical Staff as to the existing and proposed local commercial facilities within the Aspen Hill Planning Area, testimony of lack of need for additional commercial facilities from residents of the area of the subject property, the text, maps, and tables contained within the aforementioned Master Plan, and the lack of any affirmative, compelling evidence from the applicant to show a need for additional commercial zoning; we therefore conclude that a surplusage of local commercial shopping facilities to service residents of the neighborhood presently exists and that the granting of the subject application as a prelude to creating additional commercial facilities is not at the present time in the public interest. * * *.

"Though the evidence of record at most may justify or permit us to reclassify the subject property, we do not feel under the zoning law of this State either compelled or required to do so. Accordingly, we exercise our legislative prerogative and decline to grant the subject application."

The study of the Technical Staff and Planning Board, while prepared with reference to a petition for the reclassification to C-1 of a tract of land, the Faller tract, some 1,500 feet removed from the subject property, nevertheless analyzed convenience shopping facility needs in the entire Aspen Hill Planning Area. The study, based on computations of existing and proposed shopping center facilities and estimates of population growth in the area, concluded that the Faller tract should not be rezoned C-1 as "The Master Plan already provides ample

shopping facilities." It is interesting to note that in arriving at this conclusion, the study's computations took in account the 30,000 square feet of the Aspen Hill Center as a "proposed shopping center," representing the expansion of the Center as planned to occur on the subject property, and also that the Faller tract was then (as it is presently) shown as C-1 on the Master Plan.

On appeal to the Circuit Court for Montgomery County, Aspen contended that the District Council, in denying its application, had acted in an arbitrary, illegal and capricious manner and for reasons unrelated to the public health, safety and welfare. Aspen, understandably, attempted to introduce into evidence in the lower court the zoning decisions rendered by the District Council some two months after the decision on their application, which subsequent decisions granted C-1 zoning to approximately 10 acres of the nearby Faller tract. Judge Mathias, however, granted the appellee's motion to strike the evidence relating to the Faller decisions, and on the merits of the case held:

> "The law is clear that municipalities have the right to determine whether the public interest demands the exercise of the zoning power. * * *
> "Therefore, the issue which the Court must decide is whether or not the District Council acted arbitrarily and capriciously and without supporting evidence in reaching its conclusion that there was no public need for the requested rezoning. * * *
> "It would appear from the record before us that the applicant adduced no affirmative evidence to show a public need; on the other hand, the record discloses that there was what we regard as substantial evidence to support a finding that there was no public need."

On this basis, the decision of the District Council was affirmed, and Aspen now appeals.

The appellant raises several questions on appeal; how-

ever, the issues as we view them are: (1) was the decision of the District Council in refusing to rezone the subject property without substantial relation to the public welfare, and (2) was the legislative action of the District Council in refusing to grant the requested rezoning based on its administrative finding that there was no need for additional commercial facilities in Aspen Hill Planning Area arbitrary and capricious in light of its subsequent decisions in rezoning applications for the Faller tract. We will discuss these issues in the order stated.

However, before discussing these issues, we think it helpful to bear in mind that the position taken by the District Council is based upon the principle of law recognized in this State that, even when substantial change in the character of the neighborhood is established by an applicant for rezoning, rezoning is not necessarily compelled. See *Chapman v. Montgomery County,* 259 Md. 641, 647, 271 A. 2d 156 (1970) ; and *Furnace Branch Land Co. v. Board of County Commissioners,* 232 Md. 536, 539, 194 A. 2d 640 (1963). We adhere to the proposition that, although rezoning is not necessarily compelled upon a finding of change in the character of the neighborhood, nonetheless, the legislative decision to rezone or not to rezone under such circumstances is subject to review as an exercise of the police power, in order to determine if there has been an abuse of that power by way of arbitrary, capricious or discriminatory action. It is against this background that we review these issues.

I

In explaining the nature of the piecemeal rezoning process in *Woodlawn Association v. Board,* 241 Md. 187, 216 A. 2d (1966), Judge Hammond stated:

> "Although it has been said that the action of the District Council in rezoning in individual cases is ultimately legislative, it is clear that in performing this delegated and restricted function

it acts largely as an administrative or adjudicatory agency. In *Board v. Levitt & Sons,* 235 Md. 151, 158, Judge Prescott, after noting that the General Assembly called the District Council of Prince George's County, acting in its function of rezoning, an agency, and referring to its *administrative* findings, inferences, conclusions or '*decisions*' (emphasis added), said for the Court:

" 'We have repeatedly held that the action of zoning or reclassification of zoning is a function that is legislative in nature. However, this does not prevent the Council from making *administrative* findings of fact, drawing administrative inferences, and arriving at administrative conclusions and decisions, when hearing an application for rezoning, and the statute clearly anticipates such action. * * * After making its administrative findings of fact, etc., the Council is then in a position to exercise its legislative function of granting or denying the petition for reclassification.' " 241 Md. at 192, 193.

The District Council in the present case after having made the finding of change in the character of the neighborhood, along with other administrative findings, subsequently exercised a legislative function, outside of the ambit of the "fairly debatable" rule, when it determined that the appellee's application should be denied on the basis of lack of need for additional commercial facilities in the Aspen Hill Area. We must bear in mind that in this type of zoning classification there is no statutory mandate for a finding of need.[2] It becomes a question of legislative policy. We think the requirement that such a legislative policy should bear a substantial relation to

---

2. Cf. Springloch Citizens Group v. Montgomery County, 252 Md. 717, 722, 724, 251 A. 2d 357 (1969), as an example where the local ordinance requires the finding of "need" incident to a special exception; also, Neuman v. City of Baltimore, 251 Md. 92, 98, 246 A. 2d 583 (1968).

the public welfare finds support in our decision in *Creative School v. Board*, 242 Md. 552, 219 A. 2d 789 (1966), wherein Judge Barnes, for the Court, defined the constitutional limitations upon legislative enactments under the police power, stating:

> "* * * As our predecessors stated in *City of Baltimore v. Cohn*, 204 Md. 523, 530, 105 A. 2d 482, 486 (1954) citing with approval and following the decision of the Supreme Court of the United States in *Nectow v. Cambridge*, 277 U. S. 183, 48 S. Ct. 447, 72 L. Ed. 842 (1928):
>
> " 'However, the governmental power to interfere by zoning regulations with the general rights of the landowner by restricting the character of the use of his land is not unlimited, and such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare. Legislative bodies have no authority, under the guise of the police power, to impose unreasonable and unnecessary restrictions on the use of private property in pursuit of useful activities.' " 242 Md. 566, 567.

Of similar import is our decision in *Furnace Branch Land Co. v. Board, supra,* at 539 wherein we stated that, "* * * Even as in original zoning, rezoning must be in the general public interest for the promotion of health, safety and welfare of the community, as well as in the individual interests of the landowner. Code (1957), Art. 66B, Sec. 21; *Wakefield v. Kraft*, 202 Md. 136; *Huff v. Board of Zoning Appeals*, 214 Md. 48."

It is true that this Court in *Hardesty v. Dunphy*, 259 Md. 718, 725, 271 A. 2d 152 (1970), recognized that in an application for rezoning from residential to commercial, that once there has been a finding made of mistake in original zoning or substantial change in the character of the neighborhood, that the question of "need" may then play a persuasive role, "* * * for if there is no

need whatsoever the rezoning might be arbitrary and capricious, see *Wakefield v. Kraft*, 202 Md. 136, 157, 96 A. 2d 27 (1957) * * * or, as is normally the case, the factor of need would be a 'debatable question' to be weighed with other elements in determining the desirability of the rezoning," 259 Md. 725, 726. We would also note, that in the present case there is no contention that the denial of commercial rezoning will have confiscatory effects, insofar as the use of the property is concerned. *Wright v. McCubbin*, 260 Md. 11, 13, 271 A. 2d 365 (1970). Likewise, we observe that there was an affirmative finding that the proposed reclassification would not adversely affect the surrounding residential neighborhood or create any hazardous traffic problems.

We are thus, in this case, faced with the abstract question of whether, absent a statutory mandate such as is usually required in cases of special exceptions, a "lack of need" may be the sole basis for the rejection of a zoning reclassification. In deciding to answer this question in the negative, we are mindful of the fact that "the constitutionality and validity of zoning laws depend essentially upon a reasonable balancing of public interest in zoning as against opposing private interests in property" (8 McQuillin, *Municipal Corporations*, § 25.40, p. 90). The legislative decision to refuse to grant the requested rezoning in the instant case, on the sole basis that no need existed for the proposed use, does not, in our opinion, bear a sufficient relation to the public welfare to be supported as a valid enactment of the police power, *Creative School v. Board, supra; cf. Richmark Realty v. Whittlif*, 226 Md. 273, 285, 173 A. 2d 196 (1961), when balanced against the rights of the property owner. In such a situation we must not forget the underlying principle that, "Such ordinances [zoning ordinances] are in derogation of the common law right to so use private property as to realize its highest utility, and while they should be liberally construed to accomplish their plain purpose and intent, they should not be extended by implication to cases not clearly within the

scope of the purpose and intent manifest in their language." *Landay v. Board of Zoning Appeals,* 173 Md. 460, 466, 196 A. 293 (1938).

The District Council argues that such a proposition of law would require it to grant a requested commercial zoning as a matter of law once change or mistake has been established. This of course is fallacious reasoning, as it ignores the fact that there are other factors which enter into such a determination, as, for example, whether the rezoning is detrimental to the public interest by way of creating a traffic hazard, traffic congestion or lack of parking facilities, to cite but a few.

Indeed, in the instant case, where the lack of need is unaccompanied by any detriment to the public interest, should the application be granted, we cannot view the District Council's action as amounting to anything more than its substituting an economic judgment of its own for that of the shopping center's entrepreneur, as to the financial success of the venture.[3]

Additionally, we would note that the Master Plan for the Aspen Hill Area designates the subject property as a C-1 zone. In *Montgomery v. Board of County Commissioners,* 263 Md. 1, 8, 280 A. 2d 901 (1971), we said, "And while a Master Plan is not the legal equivalent of a zoning map, if there are elements of substantial change in the character of the neighborhood present, recommendations found in a Master Plan are a valid factor to be considered. * * *." See also *Chapman v. Montgomery County, supra,* at 643. We here note that while a zoning designation on a Master Plan may not support an im-

---

3. We think it pertinent to note that in Kreatchman v. Ramsburg, 224 Md. 209, 219, 167 A. 2d 345 (1961), we held that the prevention of competition is not a proper element to be considered in rezoning. Cf. Wyatt v. City of Pensacola, 196 So. 2d 777 (Fla. 1967) and Abdo v. City of Daytona Beach, 147 So. 2d 598, 603 (1962), wherein the court commenting on the manner in which the ordinance based the invocation of the police power, which it found to rest on an economic consideration rather than on an aesthetic one, stated, "When economic impact standing alone becomes a sufficient basis for such discriminatory legislation it will mark the extinction of the last vestige of the economic system under which this government operates."

mediate request for rezoning, as it is a guide for the future, yet, when, as here, it is accompanied by the dynamics of change, we think the designation on the Master Plan becomes most significant. As to the further importance which should be attributed to a Master Plan, see 20 Law and Contemporary Problems 353, 361-365, (1955) titled, *"The Master Plan: An Impermanent Constitution,"* by Professor Haar, with particular reference to page 361, wherein the author makes the comment, "* * * The Master Plan embodies recommendations for an area's development based on predictions of needs and resources for an estimated period of time. * * *" And again at page 363, the article states, "The Master Plan is at the very minimum an intelligent prophesy as to the probable reaction of the local governmental authorities to a given proposal of development." Thus, the ignoring of the Master Plan, under the facts and circumstances of this case, serves to emphasize the lack of substantial relationship between the exercise of the police power and the public interest.

## II

In considering the second issue here presented, it must be borne in mind that the subject property is located approximately 1,500 feet distant from the Faller tract, which latter property is a 10 acre tract located off Georgia Avenue immediately east of its intersection with Connecticut Avenue. We should further bear in mind that in August of 1970, the Technical Staff of the Maryland-National Capital Park and Planning Commission made a study of the Faller tract regarding its use for "convenience shopping" and determined that there were already sufficient commercial facilities in the Aspen Hill Planning Area and rejected commercial zoning for the tract.

However, on December 30, 1970, some four months later, the District Council approved the Master Plan for Aspen Hill and Vicinity, which embraces the area in which the subject property and the Faller tract are lo-

cated, wherein it recommended C-1 (commercial) zoning for both properties, thereby rejecting the conclusions made regarding the need for commercial facilities in the study by the Technical Staff submitted the previous August.

On May 4, 1971, the District Council, after approving C-1 zoning for the subject property in the Master Plan only five months before, denied C-1 rezoning for the subject property, on the basis of lack of need for a commercial facility (it must be recalled that a substantial change in the character of the neighborhood is one of the operative facts of this case).

As though it were not yet satisfied with the protean quality of its actions, the District Council on July 6, 1971, some 60 days after denying commercial zoning for the subject property, granted commercial zoning (C-1) for 8.9 acres of the Faller tract, stating, "The subject applications are in the public interest, particularly in that they will provide a form of development which complies with the recently adopted Master Plan (Aspen Hill)." On September 7, 1971, the District Council granted C-1 zoning for an additional 1.2 acres of the Faller tract.

In the court below, Aspen sought to show the arbitrary, capricious and discriminatory nature of the actions of the District Council by including in its memorandum of law submitted to the court documentation of the District Council's Faller application decisions which occurred pending the appeal of the instant case to the Circuit Court. The District Council filed a motion to strike (Maryland Rule 322) on the grounds that this constituted materials outside the record on appeal and therefore, outside the scope of judicial review, Montgomery County Code (1965), Section 111-48 (a). The court below agreed with the District Council, we think erroneously so, and viewed these Faller decisions as extraneous and would not consider them in its deliberations.

This Court has many times held that upon appeal the Circuit Court in its review of the evidence is bound by

the record made before the governmental body from which the appeal is taken. *Suburban Properties, Inc. v. Rockville,* 241 Md. 1, 6, 215 A. 2d 200 (1965) ; *Board of Commissioners v. Meltzer,* 239 Md. 144, 156, 210 A. 2d 505 (1965) and *Bishop v. Board of Commissioners,* 230 Md. 494, 501, 198 A. 2d (1963). However, these decisions are directed to matters which would enhance or diminish the evidence supporting or challenging the application, such as evidentiary matters bearing on mistake or change or need and were not, in our opinion, intended as authority to exclude matters of public record which directly relate to the arbitrary, capricious or discriminatory quality of the conduct of the zoning authority which affects the property of the applicant. In the instant case Aspen, in proffering the Faller decisions for the consideration of the lower court, was not asking it to accept or consider additional evidence to supplement the merits of its case, which it had the burden of proving, but was asking that the validity of the District Council's actions appealed from be considered in light of other actions by that body based on the same evidence and within the same planning area, as indicative of arbitrary and discriminatory action. Without intending to qualify or minimize the legal effect of the cases cited above, we think that it would have been proper for the lower court to have considered the Faller decisions for the limited purpose of determining whether the District Council acted in the instant case, arbitrarily or with discrimination. The action of the District Council in denying the C-1 classification to Aspen, when viewed in context with its granting of commercial zoning to the Faller tract on basically the same evidence, becomes patently arbitrary and discriminatory.

Counsel for the District Council also raised a question concerning the alleged unlawful modification of Aspen's application for rezoning after its filing, in violation of Section 111-4 (d) of the Montgomery County Code (1965). We think the argument is without merit. The modification in the application in the instant case was a deletion in the number of acres for which rezoning was

originally requested. We think this deletion is in conformity with Section 111-48 (e) and (f) of the Montgomery County Code (1965) which allows for the approval of the reclassification of a smaller area than that originally applied for but will not allow approval for a greater area than that applied for. In the instant case, the deletion of 3.5 acres from the original application was made to afford Montgomery County an opportunity to extend Palmira Drive through the subject property to Connecticut Avenue, if it chose to do so.

> *Order reversed, appellee to pay costs, and case remanded for the entry of an order appropriate under the opinion herein.*