712 A.2d 581

**FOOD LION, INC.**

v.

**Charlene McCALL, et al.**

**No. 1753, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

July 1, 1998.

David F. Mister (Elizabeth C. Yarema and Mister, Loker & Bartlett, on the brief), Timonium, for appellant.

Douglas C. Meister (Linda C. Carter and Meyers, Billingsley, Rodbell & Rosenbaum, P.A., on the brief), Riverdale, for appellees.

Argued before WENNER and HARRELL, JJ., and JOHN F. McAULIFFE, Judge (retired), Specially Assigned.

WENNER, Judge.

Appellant, Food Lion, Inc., appeals from a judgment of the Circuit Court for Prince George's County, reversing a decision of the Prince George's County Board of License Commissioners (the Board). On appeal, appellant presents us with the following questions:

I. Whether the Board's approval of the transfer of an alcoholic beverages license from another chain supermarket to Food Lion, Inc. was proper and, therefore, whether the circuit court erred in overturning the Board's decision?

II. Whether the Board's approval of Food Lion's application for the transfer of a Class A alcoholic beverages license in Prince George's County was proper, knowing that Food Lion, Inc. holds a license in Talbot County, a county exempted from the regulation of Md. Ann.Code Article 2B?

Finding no error, we shall affirm the judgment of the circuit court.[1]

---

1. Given that our ruling on appellant's first claim of error is dispositive of this matter, we decline to review appellant's second question presented.

## Facts

The facts of this case are undisputed. Oxon Run, Inc. (Oxon Run), apparently a closely held Maryland corporation, held a Class A (off-sale), Beer and Wine, License (the licensee). Since 1956, at various locations in Prince George's County,[2] Oxon Run had, under various trade names,[3] operated a supermarket. Ultimately, it located the operation in a shopping center at 12100 Central Avenue, Mitchellville, Maryland. In 1996, appellant leased that location from Oxon Run, for the purpose of operating one of its chain of supermarkets. After executing the lease, appellant applied to the Board for transfer of the license from Oxon Run to Food Lion, Inc., a publically-held corporation headquartered in North Carolina. To the dismay of the appellees, the Board granted the transfer. Appellees sought judicial review by the Circuit Court for Prince George's County. The circuit court held that the Board had erred as a matter of law, and reversed the Board's decision. This appeal followed.

## Discussion

 According to Article 2B, § 16–101(e)(1)(i) of the Maryland Code Annotated, "the action of the local licensing board shall be presumed ... proper and to best serve the public interest ....," unless "such decision was procured by fraud, or unsupported by any substantial evidence .... or that such decision was beyond the powers of the local licensing board, and was illegal." Applying and interpreting that standard, we said recently in *Patten v. Bd. of Liquor License Comm'r,* 107

---

2. The Joint Record Extract provided by the parties fails to delineate with specificity the various locations of the different supermarkets that operated under the subject license, or of the periods of time at each location. What is apparent is that the license has migrated through the County during its existence.

3. It appears from the less than definitive Extract that the license was initially operated as part of a Grand Union, then a Basics Food Warehouse (located somewhere on Route 450 near the Capital Plaza Shopping Center in Landover Hills, where it suffered fire damage resulting in relocation to the current location of the licensed business), an IGA Food Plus, and now the proposed transferee of the license.

Md.App. 224, 667 A.2d 940 (1995), that "[r]eviewing courts do not apply the substantial evidence test to every aspect of an agency decision. For example, questions of law are not afforded any deference by a reviewing court." *Id.* at 230, 667 A.2d 940 (*citing Liberty Nursing Ctr. v. Department of Health & Mental Hygiene*, 330 Md. 433, 624 A.2d 941 (1993)). As the Board's decision in the instant case was premised in pertinent part on its interpretation of the provisions of Article 2B, §§ 9–102(a–1) and 9–217(h), we review it as a question of law. Hence, we need afford the Board's decision no deference. We are aware that the Board has a long and uninterrupted history (asserted to be of some 40 years duration) of interpreting the pertinent statutory provisions in a manner consistent with its decision in this case. The Board's historical interpretation, however, will not be given "strong persuasive influence in determining the judicial construction of the statute," *Valentine v. Board of License Commissioners*, 291 Md. 523, 533, 435 A.2d 459 (1981) (*quoting Smith v. Higinbothom*, 187 Md. 115, 132–33, 48 A.2d 754 (1946)), where such administrative interpretation is contrary to the "plain meaning and purpose of the statute." *Id.* With this in mind, we now turn to the issue at hand.

As we have noted, interpretation of the provisions of §§ 9–102(a–1) and 9–217(h) are at the heart of this dispute. Section 9–102(a–1), facially having statewide application, provides:

*Chain stores, supermarkets or discount houses.*—A Class A, B, or D beer license, beer and wine license, . . . may not be granted, transferred, or issued to, or for use in conjunction with, or upon the premises of any business establishment of the type commonly known as chain stores, supermarkets, or discount houses. This subsection does not apply to or affect any business establishment already holding such a license or the possibility of such licensee having the license transferred to a similar type of business establishment. Discount houses do not include licensees who sell at discount prices.

Section 9–217(h), facially applying only to Prince George's County, provides:

*Chain stores, supermarkets, discount houses, etc.*—An alcoholic beverage license with an off-sale privilege of any class, except by way of renewal, may not be transferred or issued to any business establishment of the type commonly known as chain stores, supermarkets, discount houses or their franchisors and franchisees or concessionaires. However, those establishments holding an alcoholic beverage license at the time of enactment of this section may continue to hold such license, and may, at the discretion of the Board of License Commissioners, change the classification of their license.

Each proscribes the transfer of certain alcoholic beverage licenses to "chain stores" or "supermarkets." The two, however, contain significant differences. First, § 9–102(a–1) has statewide application, while § 9–217(h) applies only to Prince George's County. Second, § 9–102(a–1) provides businesses holding licenses prior to its enactment in 1962 (originally codified as § 41 of Art. 2B in substantially the same form in which it exists today) an exemption from the prohibition of transferring such licenses. Section 9–217(h), enacted in 1973, contains no such exemption.

Appellant urges us that the Board was correct in concluding that the exception contained in § 9–102(a–1) could be read into § 9–217(h). We do not agree. The Board prefaced its interpretation of §§ 9–102(a–1) and 9–217(h) with the observation that statutory schemes which differ should, "whenever possible," be read in harmony with one another. The Board then reviewed §§ 9–102(a–1) and 9–217(h)'s similarities, noting that each prohibits the issuance or transfer or use of alcoholic beverage licenses by supermarkets or chain stores. It also noted that each section provides that businesses already holding such licenses may continue to hold them. In the course of its interpretation of the two sections, the Board conceded that § 9–102(a–1) contains an exemption to the no transfer provision, while § 9–217(h) does not. The Board then concluded that, because § 9–217(h) does not have a transfer exemption such as that in § 9–102(a–1), and because § 9–217(h) has an additional provision that permits a licensee to change at the

discretion of the Board, classification of their license,[4] it does not prohibit transfers such as those which § 9–102(a–1) permits. Not surprisingly, we again disagree.

As a threshold matter, we note that Article 2B does not dictate the harmonizing of conflicting provisions. In fact, § 1–103 provides:

> In any part of this article, where a statement of a general rule of law is followed by an exception or qualification applicable to special areas or to particular persons or sets of circumstances, the law as stated in the exception or qualification shall prevail over the general rule of law insofar as there is any conflict or inconsistency between the two.

Md.Code Ann. (1957, 1998 Repl.Vol.), Art. 2B § 1–103. Accordingly, we reject the underlying basis of the Board's decision. Having done so, we now turn to our interpretation of § 9–217(h).[5]

 "The search for legislative intent, begins, ... , with the words of the statute under review. (Citations omitted.) Where, giving the words of the statute their ordinary and common meaning, (citations omitted), the statute is clear and unambiguous, both in meaning and application, (citations omitted), it usually is unnecessary to go further." *Gordon Family Partnership v. Gar on Jer*, 348 Md. 129, 137–38, 702 A.2d 753 (1997). The language of § 9–217(h) is both clear and unam-

---

4. We are unable to understand why the Board feels it significant that § 9–217(h) contains an additional provision granting such license holders permission, at the discretion of the Board, to change the classification of their license.

5. We observe that applying the rules of statutory interpretation to Article 2B can be challenging and fraught with complication. With its myriad local exceptions to "general" requirements, no doubt developed over time with the aid of continuous special interest lobbying, it is often difficult to parse out just what the State's overall, regulatory scheme or intent is on certain subjects, except in the broadest and most obvious terms, i.e., don't sell alcohol to minors or allow them to consume alcohol on licensed premises. Moreover, the language and jargon employed in much of Article 2B, often undefined, leaves great room for parochial debate. Fortunately, in the instant case, our trepidations are muted.

biguous. "An alcoholic beverage license ... , may not be transferred or issued to any business establishment of the type commonly known as chain stores, supermarkets, discount houses or their franchisors and franchisees or concessionaires." § 9–217(h). It seems clear that the transfer sought by appellant is prohibited. Moreover, it is also plain that the absence of the exception contained in § 9–102(a–1) in the later adopted § 9–217(h) demonstrates that the legislature intended that Prince George's County have no such exemption. The Board apparently believes that the legislature having enacted acted § 9–217(h) without specific language excluding such an exemption in Prince George's County indicates that it includes such an exemption. The Board is wrong. Not only has the doctrine *inclusio unius est exclusio alterius* (that the inclusion of one is the exclusion of another) long been accepted in Maryland, it is here appropriate. *See, Woodlawn Area Citizens Ass'n v. Bd. of County Com'rs*, 241 Md. 187, 216 A.2d 149 (1966); *Dodds v. Shamer*, 339 Md. 540, 663 A.2d 1318 (1995). In short, § 9–217(h) does not permit the transfer of alcoholic beverages licenses between chain stores and supermarkets.[6] Thus, we shall affirm the judgment of the circuit court.

---

6. We note that, before the Board, opponents to the transfer acknowledged that they were not contending that the provisions of Article 2B, herein addressed, prohibited transfers of a license as long as the chain store/supermarket under which the license is operating remains under the same ownership. We glean this from the following exchange between a Board member and one of appellees' attorneys at the 28 January 1997 hearing before the Board:

[Board Member]: And if there were a stock transfer transferring the ownership, as opposing counsel argued, then that would be the same owner, in your opinion, or would that be a different owner?

[Appellees' Attorney]: The way—no. And quite frankly—I mean, it's a double edged sword, but quite frankly, I think the way that the law is written, Article 2B as a whole, not only in terms of this particular law, it's really who is the corporate owner. And, you know, another question may present itself is that it's being transferred for the use of a chain store, independent of who the owner is. But if it's the same owner, then I think the privilege can transfer. If it's a different owner, even if it's a different owner of the corporate owner of the licensee, then I think it's prohibited.

\* \* \* \* \* \*

[Board Member]: —under the law?

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**

---

[Appellees' Attorney]: —the same owner has the right to transfer its location.

[Board Member]: And so, you're saying according to the statute, it allows for transfers of the same owner.

[Appellees' Attorney]: That's right.

Of course, we need not nor do we decide this issue.