761 A.2d 1027

**BALTIMORE COUNTY LICENSED BEVERAGE ASSOCIATION, INC., et al.**

v.

**Lee S. KWON, et al.**

**No. 2666, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 9, 2000.

180

David F. Mister (Elizabeth C. Yarema and Mister, Loker & Bartlett, on the brief), Timonium, for Appellants.

John H. Zink (Patricia A. Malone and Venable, Baetjer and Howard, LLP, on the brief), Towson, for Appellees.

Argued before SONNER, BYRNES, and JOHN J. BISHOP (Ret'd., Specially Assigned), JJ.

BYRNES, Judge.

The Board of Liquor License Commissioners for Baltimore County ("the Board") denied an application by Lee S. and Hea S. Kwon and Yorktowne Liquors, Inc., appellees, to transfer a Class A (Beer, Wine, Liquor) off-sale alcoholic beverages license to a new location. The Circuit Court for Baltimore County reversed that decision. The Baltimore County Li-

censed Beverage Association, Inc. ("BCLBA") appealed, presenting the following questions for review, which we have rephrased and renumbered:

I. Did the Board properly consider the issue of public accommodation in the Kwons' application to transfer their liquor license to a new location, and, therefore, did the circuit court err in ruling that public accommodation inquiry was impermissible?

II. Did the circuit court err in ruling that evidence that the numerical and population requirements of the Board's Rule 19 were satisfied establish, in and of itself, that the transfer was necessary for public accommodation at the proposed new license site?

III. Was the Board's denial of the Kwons' application proper, within the Board's expertise and sound discretion on a factual issue, and in the public's best interest, and, therefore, did the circuit court err in substituting its judgment and reversing the Board's decision?

All of the questions presented by the BCLBA ask, at least in part, whether the circuit court erred in its decision. Yet, "our function in reviewing an administrative decision, 'is precisely the same as that of the circuit court.'" *Carriage Hill Cabin John, Inc., v. Maryland Health Resources Planning Comm'n,* 125 Md.App. 183, 211, 724 A.2d 745, 759 (1999) (quoting *Department of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994)); *Department of Human Resources v. Thompson,* 103 Md.App. 175, 188, 652 A.2d 1183 (1995). We review the agency's decision itself. Therefore, to the extent that the questions presented ask whether the circuit court erred, we will not address the point, but will focus instead on the propriety of the agency's action. Because questions I and II are interrelated, we will discuss them together.

## FACTS AND PROCEEDINGS

Mr. and Mrs. Kwon are the individual licensees on the liquor license in question, for the benefit of Yorktowne Li-

quors, Inc., a corporation that they own.[1] For seven years, the Kwons owned and operated a liquor store in the York-towne Shopping Center, at 114 Cranbrook Road, in Cockeys-ville, in the 8th election district in Baltimore County. During the last several years, Giant Foods, the major tenant of the shopping center, moved and many other stores closed. As a consequence, there was a substantial decrease in customer traffic to the shopping center, and a consequent decline in the Kwons' business. In addition, in early 1998, the shopping center's landlord told the Kwons that, to accommodate planned renovations to the shopping center, they would have to relocate their business to a storefront situated in an area of the center with even lower customer traffic.

At that point, the Kwons decided that it would be best for them to move their business to another shopping center within the 8th election district. Accordingly, they filed an application with the Board to transfer their liquor license from the Yorktowne Shopping Center address to the Fairgrounds Plaza Shopping Center, at 41 West Aylesbury Road, in Timonium. The Fairgrounds Plaza Shopping Center is a new shopping center that includes a Super Fresh grocery store and other specialty shops. It is located 1.8 miles from the Yorktowne Shopping Center.

On June 21, 1999, the Board held a hearing on the Kwons' application to transfer their liquor license from the Cockeys-ville location to the Timonium location. At the hearing, the Kwons presented both lay and expert testimony on the "need" for the liquor license at the new site. Richard Darrell, the leasing agent for Fairgrounds Plaza Shopping Center, testified as an expert on real estate and commercial development in the area. Gerard Patnode also testified for the Kwons as an expert in demographics, marketing, and economics. Messrs. Darrell and Patnode indicated that Fairgrounds Plaza Shop-ping Center would draw patrons from a three-mile radius and that the surrounding area was heavily populated and easily

1. We will refer to the Kwons, individually, and Yorktowne Liquors, Inc., collectively, as "the Kwons."

accessible. Mr. Patnode explained that, while the population in the area had grown substantially in the preceding decade, the number of liquor licenses had remained unchanged. He opined that the new location for the Kwons' liquor store would serve the public better than had the old location because of changes in the center of population and in traffic flow. The Kwons also produced a petition signed by area residents who supported the liquor store at the new location.[2]

The BCLBA presented the testimony of liquor license holders in the vicinity of the Fairgrounds Plaza Shopping Center along the York Road corridor. The general tenor of this testimony was that a liquor store at the new location was not needed because the current license holders were able to adequately serve the public, i.e., customers were not left waiting in long lines. The license holders admitted, however, that they were concerned about increased competition that might result if the transfer application were granted. Moreover, there was evidence that two of the license holders had themselves inquired about leasing space at the Fairgrounds Plaza Shopping Center.

The BCLBA also presented the testimony of two members of the community. The first, Edward Kaufman, stated that he did not believe there was a need for a liquor store at the new location because there were several stores in the area and there was not a long wait in these stores. The second community member, Thomas Ragsdale, provided advertising services for one of the local licensees who was protesting the transfer. He stated that a liquor store was not needed at the new location because lines were short and he always was waited on in a quick manner.

The only other testimony presented by the BCLBA came from James Boyer, who testified in his capacity as President of the Lutherville Timonium Recreation Council ("Recreation

---

2. Although some of the signatures on the petition were not from residents of the community, the vast majority, 72 out of 94, were from residents of the area surrounding the proposed location.

Council").[3] He testified that the Recreation Council had formally and unanimously voted to oppose the license transfer based on a lack of need for such a license.

After hearing all of this testimony, the Board ruled that, while the Kwons had satisfied the other requirements for the transfer of their license, they had not shown that the transfer was necessary for the accommodation of the public. For this reason, the Board denied the Kwons' application.

The Kwons filed a petition for judicial review in the Circuit Court for Baltimore County. While the case was pending in the circuit court, the Kwons learned that the Lutherville–Timonium Recreation Council had not formally voted to oppose the application. The circuit court reviewed affidavits on this issue from the parties and reviewed the minutes of the Recreation Council. It concluded that Mr. Boyer's testimony before the Board was "patently false."

As we have indicated, the circuit court reversed the decision of the Board. It concluded that the Board had applied an incorrect standard for determining whether the transfer was necessary for the accommodation of the public.

Although we do not agree with the circuit court's analysis in its entirety, we shall affirm its judgment for the following reasons.

## DISCUSSION

### STANDARD OF REVIEW

 The standard of review for an appeal from a local liquor licensing board is governed by Md.Code (1957, 1998 Repl.Vol., 2000 Supp.) Art. 2B, § 16–101(e), which provides, in relevant part:

Upon the hearing of such appeal, the action of the local licensing board shall be presumed by the court to be proper and to best serve the public interest. The burden of proof shall be upon the petitioner to show that the decision

---

3. Mr. Boyer did not testify in his individual capacity.

complained of was against the public interest and that the local licensing board's discretion in rendering its decision was not honestly and fairly exercised, or that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, or was unreasonable, or that such decision was beyond the powers of the local licensing board, and was illegal.[4]

We have stated in the past that judicial review of a decision by the Board is similar to the review of the decisions of most other agencies. *Blackburn v. Board of Liquor License Commissioners for Baltimore City*, 130 Md.App. 614, 623, 747 A.2d 725, 729 (2000). If the Board's decision is supported by substantial evidence and it committed no error of law, we must

---

4. This standard of review first was enacted in 1943 by chapter 714 of the Laws of Maryland. Md.Code (1951), art. 2B § 63. The law provided for appellate review of decisions of the liquor board by the circuit court and stated that the circuit court would review the agency's decision to determine if, "the local board's discretion in rendering its decision was not honestly and fairly exercised, or that such decision was arbitrary, or procured by fraud, or unsupported by any substantial evidence, or was unreasonable, or that such decision was beyond the powers of the board, and was illegal." Until 1992, however, judicial review of decisions of the liquor board beyond the circuit court level was limited to those cases in which a circuit court judge had decided an issue of law contrary to a prior decision by another judge. As a consequence, over a period of many years, there are few appellate decisions applying this standard. Appellate review of decisions of the liquor board by this Court was expanded by enactment of House Bill 92–26, codified at Article 2B, § 175(f). The Floor Report for that bill states, "the bill would make the appeals process in local liquor board cases consistent with other administrative appeals."

There are no committee reports from 1943 that shed further light on whether the standard of review was intended to differ from the standard of review for decisions of other administrative agencies. Shortly after the passage of the 1943 law, the Attorney General opined that the standard of review provision was one of a number of provisions that "indicate that the Legislature intended that every possible presumption be given to the correctness and validity of the local board's decision." 41 Op. Att'y Gen. 88, 90 (1956). This statement leads us to believe that this standard of review is not broader than the standard applicable to most other agency decisions. It is not necessary for us to address that question, however, because, for the reasons that we set forth in Part III, *infra*, we conclude that the agency's decision in this case was not supported by substantial evidence.

affirm that decision. *Board of Liquor License Comm'rs for Baltimore County v. J.R. Bros., Inc.,* 119 Md.App. 308, 312, 705 A.2d 16, 18 (1998); *see also United Parcel Serv. v. People's Counsel for Baltimore City,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994). If the Board's decision is not supported by substantial evidence or if it committed an error of law, we must reverse the Board. *See* Art. 2B, § 16–101(e)(4) (the court may only affirm, reverse, or modify the action of the Baltimore County liquor licensing board, a court can not remand the case to that board).

### I. & II.

The BCLBA maintains that the Board properly considered whether the transfer of the Kwons' liquor license was "necessary for the accommodation of the public." The Kwons reply that "necessity" is not a requirement for the transfer of a liquor license.

Section 10–503 of Article 2B of the Maryland Code sets out the requirements to transfer a liquor license. Section 10–503(a)(2) provides that a transfer,

> may be permitted, . . . but only if: (i) An application for the transfer or sale has been made; (ii) All retail sales, amusement, admission, and withholding taxes have been paid to the Comptroller of the Treasury of the State; (iii) A bulk transfer permit is obtained if the stock of alcoholic beverages is to be transferred whether by sale, gift, inheritance, assignment, or otherwise, and irrespective of whether or not consideration is paid; and (iv) The new location or assignee *is approved as in the case of an original application for such a license.*

Md.Code (1957, 2000 Supp.) Art. 2B § 10–503 (emphasis added). It is clear that section 10–503(a)(2) does not, on its face, require that the applicant prove that the transfer is necessary. Subsection (a)(2)(iv) states, however, that, in order to be approved, the transfer applicant must meet the same requirements as an applicant for a new license.

An applicant for a new liquor license must meet the requirements found in section 10–202. Subsection (a)(2) of

that section states, *inter alia*, that the Board shall refuse an application for a new license if it determines that "[t]he granting of the license is not necessary for the accommodation of the public." Md.Code (1957, 1998 Repl.Vol., 2000 Supp.) Art. 2B § 10–202(a)(2)(i). Thus, by requiring that a transfer applicant meet the same preconditions as a new license applicant, section 10–503 incorporates, by reference, a requirement that a transfer applicant show that the transfer is "necessary" for public accommodation. Therefore, to obtain their transfer application, the Kwons were required to show that the transfer was "necessary for the accommodation of the public."

The BCLBA further submits that the Board applied a proper standard for determining that the Kwons' requested transfer was not "necessary for the accommodation of the public." The Kwons counter that the Board interpreted "necessity" incorrectly, and, therefore, did not properly apply the law to the facts in deciding against their application.

In rendering its decision, the Board stated,

Now we get to need and public accommodation. And [sic] after conferring with the Board, the Board feels that with the people coming in and protesting, and with the liquor license available, we feel need has not been shown.

Although it is not clear from this excerpt what standard the Board used to determine whether the Kwons' requested transfer was "necessary," it appears, from the transcript of the hearing, that the Board employed a standard that focused, at least in part, on the effect the transfer would have on other licensees who are competitors of the Kwons. Although the proper exercise of the Board's power may produce a secondary effect of limiting economic competition, its power must be used for the primary purpose of protecting the public and promoting general welfare, and not to benefit and protect individual license holders. Md.Code, (1957, 1998 Repl.Vol.) Art. 2B § 1–101(a)(3), (b)(1). *See also J.R. Bros., Inc.*, 119 Md.App. at 320, 705 A.2d at 22. Accordingly, the Board may not subvert the "necessity" standard to use it to shield license holders from increased competition.

■ Regardless of what the precise standard was that the Board applied, on review, the Board's interpretation of an issue of law ordinarily is not afforded any deference. *Liberty Nursing Center, Inc. v. Department of Health and Mental Hygiene,* 330 Md. 433, 443, 624 A.2d 941, 946 (1993); *Food Lion v. McCall,* 122 Md.App. 429, 433, 712 A.2d 581, 582–83 (1998); *Patten v. Board of Liquor License Commissioners for Baltimore City,* 107 Md.App. 224, 230, 667 A.2d 940, 943 (1995). Questions of statutory interpretation are questions of law, and an agency's interpretation of a statute normally is given little weight in determining the judicial construction of that statute. *Baltimore Bldg. & Constr. Trades Council AFL–CIO v. Barnes,* 290 Md. 9, 14, 427 A.2d 979, 982 (1981) (holding that a labor union council is not an "interested person" within the meaning of Md.Code (1957, 1979 Repl.Vol.) Art. 100, § 101(c), pertaining to a hearing before the Commissioner of Labor and Industry); *Food Lion,* 122 Md.App. at 433, 712 A.2d at 582–83. Generally, an agency's determination on a question of law is subject to the substituted judgment test—the reviewing court substitutes its judgment for that of the agency if the court's analysis of the legal issue is different from the agency's analysis. *Carriage Hill Cabin John,* 125 Md.App. at 214–15, 724 A.2d at 761. The agency's interpretation of a statute is given consideration, however, if the agency's interpretation has been consistent and long-standing, was contemporaneous with the passage of the statute, and was the product of a reasoned and focused analysis. *Baltimore Gas & Elec. Co. v. Public Service Comm'n,* 305 Md. 145, 161, 501 A.2d 1307, 1315 (1986); *see also McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989).

Here, the structure of the liquor board system—a network of local, independent boards—militates against consistency of interpretation and instead creates a substantial likelihood that differing interpretations of the term "necessary" by various local boards will result. Furthermore, there is reason to conclude from the elaborate statutory scheme regulating the liquor boards that the legislature sought to circumscribe their power more closely than that of other agencies. *See Board of*

*Liquor License Comm'rs v. Hollywood Productions, Inc.,* 344 Md. 2, 13, 684 A.2d 837, 842–43 (1996); *J.R. Bros., Inc.,* 119 Md.App. at 314, 705 A.2d at 19. For these reasons, we decline to give the Board's interpretation of the meaning of "necessary" any substantial weight in our analysis. We apply the substituted judgment test to determine this issue. *Patten,* 107 Md.App. at 230, 667 A.2d at 943.

The Kwons argue that the demographic statistics set forth in the Board's Rule 19 furnishes the proper standard for determining necessity, and that they satisfied this standard when they were *originally* issued their liquor license. In their view, if there was sufficient population to justify the issuance of the license under Rule 19 in the first instance, then the license automatically is "necessary for the accommodation of the public," for purposes of a transfer application. The BCLBA argues, to the contrary, that the criterion in Rule 19 addresses only the maximum number of licenses allowable in an election district and does not serve to establish whether a given license is "necessary for the accommodation of the public."

Rule 19, *Population and Numerical Limitations,* states, in relevant part:

> The maximum number of Alcoholic Beverage Licenses in each of the Election Districts of Baltimore County, Maryland, shall be limited to one (1) On Sale License, excluding Club Licenses, for each two thousand five hundred (2,500) actual population of each Election District and one (1) Off Sale License for each four thousand (4,000) actual population of each Election District, based on and as determined by the official and most current population report of each Election District as determined by the Baltimore County Office of Planning and Zoning. No license shall be transferable from the Election District in which it was originally located.

> \* \* \* \*

> The requirements of this Rule are *in addition* to the requirements imposed by Article 2B Sec. 10–202, Annotated

Code of Maryland and a finding that a license application meets the numerical and population requirements contained herein *shall not be sufficient alone to meet the general requirements imposed by Article 2B for the issuance of new licenses.* Nothing contained herein shall prevent the renewal of currently existing licenses.

Baltimore County, Md., Rules and Regulations of the Board of Liquor License Commissioners, R. 19 (1995)(emphasis added).

It is evident that Rule 19 furnishes a population-based formula for determining the *maximum* number of licenses that may be issued for each election district; the rule does not mention the term "necessary." In determining the legal meaning and effect of Rule 19, we also note that the Rule was promulgated under Article 2B section 9–201, not under section 10–202.[5] Section 9–201 authorizes local boards to set a standard for determining a *sufficient* number of licenses in an election district. Md.Code (1957, 1998 Repl.Vol.) Art. 2B § 9–201. The maximum number of licenses that may be issued might not automatically be the same number of licenses that is "necessary for the accommodation of the public." On the other hand, the population-based nature of Rule 19, that one liquor license is appropriate for every 2,500 people, suggests that this is the number of licenses that is most appropriate for the population, i.e., that this number is "necessary for the accommodation of the public." Either interpretation of Rule 19 is plausible.

The final paragraph of Rule 19 states that the rule is *in addition to the requirements of section 10–202* and that the rule is not sufficient, alone, to meet the requirements imposed by Article 2B for new licenses.[6] This qualifying statement

---

5. Both the appellant and the appellee recognize, in their briefs, that the Board's Rule 19 was promulgated under Md.Code (1957, 1998 Repl. Vol.), Art. 2B § 9–201.

6. The Kwons argue that the final paragraph of Rule 19 applies only to new licenses, and as transfer applicants, it does not apply to them. As

could be reconciled with either the Kwons' view of Rule 19 or the BCLBA's view of Rule 19. On its face, it is unclear whether Rule 19 sets out the proper standard for determining if a license is "necessary for the accommodation of the public."

■ In resolving whether Rule 19 defines "necessary for the accommodation of the public," we also must consider that an agency's interpretation of its *own rule* is given deference. When the agency's own rules are concerned, a court should acknowledge that an agency has a "superior ability to understand its own rules and regulations, [and] a 'court should not substitute its judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken.' " *Department of Health & Mental Hygiene v. Reeders Mem'l Home,* 86 Md.App. 447, 453, 586 A.2d 1295, 1297 (1991) (quoting *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 513, 390 A.2d 1119 (1978)); *see also Thompson,* 103 Md.App. at 189, 652 A.2d at 1189–90.

■ The Board's position that Rule 19 does not satisfy the "necessary for the accommodation of the public" requirement is implicit in its holding that, even though the license was warranted based on Rule 19's population formula, the Kwons did not show that the transfer was "needed." The Board's interpretation of Rule 19 as not being sufficient to show that the transfer was "necessary for the accommodation of the public" should be given deference on review. *Reeders Mem'l Home,* 86 Md.App. at 453, 586 A.2d at 1297 (quoting *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 513, 390 A.2d 1119 (1978)). In light of the ambiguity of the rule and the deference owed to the Board's interpretation of its own rules, we conclude that Rule 19 does not state the appropriate standard for determining if a transfer is "necessary for the accommoda-

---

we already have noted, however, section 10–503, governing transfers of licenses, requires the applicants to satisfy the requirements for new licenses. Thus, the statement in Rule 19 that the population requirement is not sufficient to meet the requirements for new licenses is relevant to the Kwons' application for transfer because the Kwons must meet the new license requirements.

tion of the public." Thus, whether the criterion set forth in Rule 19 was satisfied when the Kwons first obtained their license or when they applied for the transfer is not determinative of the issue of necessity.

If Rule 19 does not control the standard for necessity, the question remains how that standard is to be given meaning. In *Neuman v. Mayor of Baltimore,* 251 Md. 92, 246 A.2d 583 (1968), the Court of Appeals defined the term "need" in the context of zoning law. *Neuman* involved a challenge to the location of a doctor's office in a residential area. The relevant law stated that a doctor's office was a permissible use in a residential area if, *inter alia,* there was a "need" for such services in the area. The Court held that, in this context, "need" meant that which was "expedient, reasonably convenient and useful to the public." *Id.* at 99, 246 A.2d at 587

The *Neuman* case is analogous to the case *sub judice.* Art. 2B section 10–202 allows for the transfer of a liquor license if, among other things, "need" is shown. Here, the statute itself indicates that "need" should be considered in light of what is "necessary for the *accommodation* of the public." Art. 2B § 10–202(a)(2) (emphasis added). When accommodation is the ultimate goal, absolute physical necessity is not required. This is especially true when, as here, the accommodation at issue involves the location of a liquor store.

 *Black's Law Dictionary* states that the meaning of "necessary" varies with the context in which it is used:

> [The word] may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity.

*Black's Law Dictionary* 714 (abridged 6th ed.1991). Here, a definition of need that focuses on convenience is, given the context, most appropriate. We conclude that "necessary," in this instance, means that the transfer of the liquor license to

the transfer site will be "convenient, useful, appropriate, suitable, proper, or conducive" to the public in that area.

## III.

Having determined that "necessary" in this context invokes a standard of convenience, we consider whether the Board's finding that there was not a "need" for the liquor license at the transfer site location was supported by substantial evidence. *Blackburn*, 130 Md.App. at 623–24, 747 A.2d at 730; *Patten*, 107 Md.App. at 230, 667 A.2d at 943. The Board's factual determination that there was no need is presumed correct. *Patten*, 107 Md.App. at 229, 667 A.2d at 942; *Thompson*, 103 Md.App. at 189, 652 A.2d at 1189. This Court shall not substitute its judgment for that of the agency. *Eberle v. Baltimore County*, 103 Md.App. 160, 166, 652 A.2d 1175, 1178 (1995). We will reverse the Board, however, if there is not substantial evidence to support its decision. Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Thompson*, 103 Md.App. at 190, 652 A.2d at 1190 (quoting *Supervisor of Assmnts. v. Group Health Ass'n, Inc.*, 308 Md. 151, 159, 517 A.2d 1076 (1986)); *see also Resetar v. State Bd. of Educ.*, 284 Md. 537, 554, 399 A.2d 225, 234 (1979)(quoting *Insurance Comm'r. v. National Bureau of Cas. Underwriters*, 248 Md. 292, 309–10, 236 A.2d 282 (1967)).

As we have indicated, the evidence before the Board that was offered to show that the liquor license transfer was not necessary for the accommodation of the public consisted of the testimony of competing licensees along the York Road corridor that lines in their stores were short, and, in one case, that business was stagnant; and the testimony of two community members, also to the effect that lines at the competing stores were not long. (The BCLBA does not argue that the circuit court erred in concluding that Mr. Boyer's testimony was false, and does not ask us to consider it in our review.) This evidence, when viewed in a light most favorable to the BCLBA, was not such that the Board reasonably could have concluded that a liquor store at the Fairgrounds Plaza Shop-

ping Center was not convenient, useful, appropriate, suitable, proper or conducive to accommodation of the public. Even discounting any bias on the part of the competing licensees, and wholly crediting their testimony, it does not logically follow from the fact that lines at their stores were not long, or that business was stagnant at one store, that a liquor store at the transfer location was not necessary to accommodate the public at that transfer location. Indeed, this testimony bore no connection whatsoever to the state of affairs at the Fairgrounds Plaza Shopping Center.

The only evidence before the Board that focused on the needs of the public in the area of the Fairgrounds Plaza Shopping Center showed that a liquor store at that location would be convenient and accommodating to the public. The demographics and marketing experts and a commercial development agent called by the Kwons testified about the reasons that consumers would frequent the shopping center, including to shop for food at the grocery store, and the numbers of patrons that would be drawn to the center given its location close to an interstate highway and in a population-dense area. The evidence projecting the expected volume of customers to the center, analyzing the reasons for patronage of the center, and demonstrating the center's accessibility pointed to but one conclusion: that a liquor store at the Fairgrounds Plaza Shopping Center would be an accommodation and convenience to members of the public.

Because the evidence before the Board was not such that a reasonable mind would accept it as adequate to establish that the liquor license transfer sought by the Kwons would not be useful and convenient for the accommodation of the public, the Board's decision was not supported by substantial evidence.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**