780 A.2d 387

**ROSEDALE PLAZA LIMITED PARTNERSHIP**

v.

**LEFTA, INC., et al.**

No. 1424, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Sept. 6, 2001.

William J. Selle (O'Malley, Miles, Nylen & Gilmore, P.A., on the brief), all of Annapolis, for appellant.

Robert Hanley and Stuart Kaplow (Nolan, Plumhoff & Williams, Chtd. on the brief), all of Towson, for appellees.

Argued before DEBORAH S. EYLER, LAWRENCE F. RODOWSKY, (Ret'd, Specially Assigned), and RAYMOND G. THIEME, JR. (Ret'd, Specially Assigned), JJ.

THIEME, Judge.

This case presents us with a relatively straight-forward matter of first impression that is complicated by rather byzantine proceedings. Like Theseus, however, we must follow Ariadne's string to extricate ourselves from the labyrinth. We

will begin by briefly setting forth the factual background and proceedings in this case that arose prior to the determination by the Circuit Court for Baltimore County that the individual licensees of a liquor license have no property interest in that license when it is issued on behalf of a corporation.

Rosedale Plaza Limited Partnership appeals from that decision and presents us with the following question:

I.   Did the circuit court err in holding that the owner of a liquor license was not the named licensees, but rather the corporation for whose use the license was issued?

### Facts and Proceedings

On July 23, 1997, Rosedale and Lefta, Inc. entered into a shopping center lease for the property known as 703 Chesaco Avenue, Baltimore, Maryland 21237 to be used by Lefta, Inc. as a restaurant, bar and packaged goods store. Andreas Pitsos, Maria Papadimitriou, and Irene Pitsos signed personal guarantees in connection with the lease agreement. These individuals made application to the Baltimore County Board of Liquor License Commissioners for a Class D beer, wine, and liquor license on behalf of Lefta, Inc.; the liquor license was issued on April 9, 1997. In connection with the purchase of the business to be operated in the newly leased space, Lefta, Inc. granted a security interest in certain property held by the corporation, including the liquor license, to Chesaco Enterprises and J & J Real Estate, pursuant to a Security Agreement and Financing Statement.

The business ceased operating in August 1997, only months after opening. Lefta, Inc. subsequently defaulted on the rent payments on the premises, and therefore Rosedale Plaza Limited Partnership filed an action against Lefta, Inc., Andreas Pitsos, Georgia Pitsos, Maria Papadimitriou, Irene Pitsos, and George Dorn. The circuit court entered judgment against the individuals in the principal amount of $85,430.63 and attorney's fees of $6,742.25.

. Lefta, Inc. filed a Bankruptcy Petition with the U.S. Bankruptcy Court for the District of Maryland, and the alcoholic

beverages license that is the basis of this appeal was claimed as property of the estate in that bankruptcy case. The trustee in the Lefta, Inc. bankruptcy case filed a Motion to Sell Personal Property of the Estate free and clear of Liens; the personal property that was the subject of the motion was the liquor license. Rosedale thereafter filed a Motion for Relief from the Automatic Stay with the U.S. Bankruptcy Court to gain possession of the liquor license, requesting permission to execute on its judgment entered against the individual licensees' interests in the license. It is undisputed that the liquor license in question is the only substantial asset from which to satisfy the respective claims. The Bankruptcy Court denied the Motion to Lift Stay, indicating that Lefta, Inc. had an interest in the license, and allowed the sale.

The license remained part of the bankruptcy estate upon the failure of the parties to agree on the terms of a Consent Order. Thereafter, Rosedale requested that a Writ of Execution be issued by the circuit court to attach the interest held in the license by the judgment debtor individual licensees. The Writ was issued, and the Sheriff levied on the license. Rosedale then filed a request for sale seeking to have the license sold to satisfy the judgment entered against the judgment debtor individual licensees. Appellees, Chesaco Enterprises, Inc. and J & J Real Estate, the secured creditors of Lefta, Inc., then filed a Motion for Release of Property from Writ of Execution concerning the license. Prior to the hearing on the Motion to Release Property, the trial court ruled that the Motion was stayed "pending resolution of the bankruptcy action in federal court."

With the prior Motion To Lift Stay unresolved, the Bankruptcy Judge ruled that the automatic stay would be lifted and the parties could seek State Court determination as to the ownership of the license. The sale of the license was stayed by the Bankruptcy Court in order to protect the license during the pendency of any State Court action. Thereafter, the case came to a hearing and the trial court ruled that the license was the property of and owned by the individual licensee judgment debtors and not by Lefta, Inc., the corporation for

whose benefit the license had been issued. The trial court declined to quash the Writ of Execution. The Baltimore County License Beverage Association filed a Motion to Intervene that was granted. Chesaco Enterprises, Inc. and J & J Real Estate filed a Motion to Alter or Amend the Judgment. Once again, the matter was set for hearing, whereupon the trial court reversed its prior ruling. This time, the trial court ruled that the license was held for the benefit of the corporation, Lefta, Inc., and that the individual licensees had no ownership interest in it. Rosedale thereupon noted this appeal.

## Discussion

Appellant argues that the circuit court erred in holding that the owner of the liquor license is the corporation for whose use the license was issued. Appellant contends instead that it is the named licensees that own the license, and that the applicable law precludes a corporation from owning a liquor license.

The face of the license at issue here reads, in pertinent part: THIS IS TO CERTIFY, that Andreas Pitsos, Maria Papadimitriou, Irene A. Pitsos, Lefta, Inc., t/a Hillbrook Station Raw Bar & Grill/Chesaco Liquors, 1703–09–11 Chesaco Avenue, Baltimore, MD 21237 is licensed by the State of Maryland to keep for sale, and to sell all alcoholic beverages at retail at the place herein described, for consumption on the premises or elsewhere.

Md.Code (1957, 1998 Repl.Vol.) § 9–101 of Article 2B, which covers the general provisions regarding the issuance of liquor licenses in Maryland, provides in pertinent part: [1]

(a) *License issued to individuals; application for partnership.*—A license may not be issued to a partnership, to a corporation, or to a limited liability company, but only to individuals authorized to act for a partnership, corporation,

---

1. Section 9–101 is entitled "License not be to issued to a partnership, corporation, limited liability company, or unincorporated association."

or limited liability company who shall assume all responsibilities as individuals, and be subject to all of the penalties, conditions and restrictions imposed upon licensees. . . .

\* \* \*

(b) *Application for corporation or club.*—If the application is made for a corporation, or a club, whether incorporated or unincorporated, the license shall be applied for by and be issued to three of the officers of that corporation or club, as individuals, for the use of the corporation or club, at least one of whom shall be a registered voter and taxpayer of the county or city, or State of Maryland when the application is filed with the Comptroller, and shall also have resided therein, at least two years prior to the application. . . .

█ The language is clear that a liquor license may not be *issued* to a corporation. We do not think, however, that it necessarily follows that a corporation cannot *own* a liquor license. On the contrary, we think that a corporation can own a liquor license, and the determination in a case such as this as to whether the license is owned by the individual applicant(s) or by the corporation depends on the circumstances of the particular case. Here, an examination of the face of the license itself does not aid in this determination, as it indicates that the license was issued to the three individuals *and* to the corporation. Although the name of the corporation appears on the license, it nonetheless seems clear, pursuant to § 9–101, that the license was issued to the individual applicants. The relevant issue in this matter, however, is the determination of the *ownership* of the license. Therefore, it is imperative not to confuse the issuance of the license with its ownership. Our focus shall be on the intent of the legislature in drafting the applicable provisions, along with the intent of the individual applicants in this case in applying for the license.

█ We hold that the Circuit Court for Baltimore County did not err in holding that the liquor license was owned by Lefta, Inc. and therefore not subject to levy by a judgment creditor of the individual licensees. The license was issued to

the licensees in their capacities as officers and stockholders of Lefta, Inc. Thus, the liquor license in this case was owned by Lefta, Inc., and the licensees obtained no individual ownership interest in the liquor license.

The Alcoholic Beverages License Application completed by the individuals contained a part entitled "For Clubs, Corporations, Partnerships and Associations," in accordance with the provisions of § 9–101(b), which is entitled "Application for corporation or club." The information requested in this part of the application includes the name and address of the corporation and the name and official capacity of all officers or partners. A note following that request states: "If application is made *on behalf of a corporation* or club at least one of the individuals applying must be a registered voter and taxpayer of Baltimore County." It then requests the name of that qualifying individual, a voting address, and an address for the property on which the tax is paid by that person.

This portion of the application obviously is left blank in the event that a club, corporation, partnership, or association is not involved with the liquor license. In the instant case, however, one of the individuals qualified in this sense, and the individuals completed this portion of the application. They therefore demonstrated their intention that the application indeed was completed on behalf of the corporation.

A plain reading of the pertinent provisions of § 9–101 indicates that appellant's interpretation of those provisions is incorrect. In interpreting the statute, "the paramount objective is to ascertain and give effect to the intent of the legislature." *Philip Electronics North America v. Wright,* 348 Md. 209, 216, 703 A.2d 150 (1997) (citations omitted).

If the statutory language is clear and unambiguous and is consistent with the purposes of the legislation in general and the particular provision being interpreted, our inquiry usually ends at that point. If the language is unclear or ambiguous, we seek to discern the intent of the legislature from surrounding circumstances, such as legislative history,

prior case law, and the purposes upon which the statutory framework was based.

*McNeil v. State,* 356 Md. 396, 404, 739 A.2d 80 (1999) (citations and internal quotation marks omitted).

Furthermore, the provisions of the statute "must be read together, in conjunction with one another, to discern the true intent of the legislature." *Wright,* 348 Md. at 216, 703 A.2d 150 (citations omitted). "Of course, we seek to avoid an interpretation which would lead to an untenable or illogical outcome." *Id.* (citations omitted).

Construing § 9–101 in the manner propounded by appellant would lead to untenable or illogical results. Furthermore, appellant's interpretation of the statute would lead to absurd consequences and is inconsistent with common sense. Often a liquor license is a very valuable asset of a restaurant or bar business, but appellant's interpretation would preclude individuals from protecting that asset from personal liability even though their business may be set up as a corporation or limited liability company. This valuable asset could be taken from a corporation operating a restaurant/bar in order to satisfy the personal debt of an individual licensee.

Further, most of the provisions of § 9–101 would be entirely superfluous if appellant's interpretation is correct that a corporation may not own a liquor license. The requirements of § 9–101(b) that the licensees be officers of the corporation, the license application be signed by the president or vice president of the corporation, the application identify all of the officers, and the name and address of the corporation be disclosed, are all unnecessary if the liquor license is to be owned by the individual licensees.

Appellant argues that the use of the word "person" in § 9–102 demonstrates the intent by the legislature that it is the individual licensees that own the liquor license when it is obtained on behalf of a corporation. Specifically, appellant sets forth the following language from § 9–102(a):

*More than one license for the same person or premises.* No more than one license provided by this article . . . shall be

issued in any county or Baltimore City, to any person, or for the use of any partnership, corporation, unincorporated association, or limited liability company. . . .

The focus by appellant on this provision is inaccurate for two reasons. First, we have said already that the *issuance* of a liquor license is not dispositive regarding the *ownership* of a liquor license. Therefore, the emphasis on the issuance of the license is misleading. Second, appellant obviously has failed to read what often is, as is the case here, a very valuable section of a statute, namely the definitions, as set out in § 1–102 of Article 2B.[2] Section 1–102(a)(1) provides: "In this article the following words have the meanings indicated." The section goes on to define numerous terms used throughout the article; § 1–102(a)(21) states:

"Person" means a natural person, an association, a partnership, a *corporation*, or a state, political subdivision, or municipality, or any agency or instrumentality of the State, any political subdivision, or municipality.

(Emphasis added.)

The only logical interpretation of § 9–101 is that liquor licenses issued to individuals for the use of a corporation are owned by the corporation. Such a construction provides certainty and security in the relationship between the licensees and the corporation and protects the investment of a corporation in a business that involves the sale of alcoholic beverages. The requirement that licenses be issued to individuals is to insure that there are individuals responsible and subject to the penalties, conditions and restrictions imposed upon licensees pursuant to § 9–101 and the applicable tax requirements.

There are numerous provisions within Article 2B that indicate that a corporation may own a liquor license. Section 9–301 states:

---

2. As we have set forth, Article 2B is the Alcoholic Beverages Article of the Code.

In the enumerated subdivisions below, a person, partnership, firm or *corporation,* except by way of renewal, may not have an interest *in more than one license,* whether held or controlled by direct or indirect ownership, by stock ownership, interlocking directors or interlocking stock ownership, or in any other manner, directly or indirectly. It is the intention of this section to prohibit any person, firm, partnership *or corporation* from having any *interest,* directly or indirectly, *in more than one license.*

(Emphasis added.)

Section 9–301 limits entities, specifically including corporations, from having an interest in more than one license. It obviously follows that a corporation may have an interest in one license. It specifies that an interest can be through direct ownership, thus dispelling appellant's contention that a corporation may not own a liquor license.

Section 10–103(b)(8) provides that an application for a liquor license must contain a statement providing "[t]he name of the owner of the premises upon which the business sought to be licensed is to be carried on[.]" This provision explicitly states that it is the business itself that is licensed rather than individuals. It makes no provision excepting corporations, and therefore demonstrates the intent of the legislature that a corporation may own a liquor license.

Section 10–301 involves general procedures such as renewals, hearings, and substitution of officers. Specifically, § 10–301(2)(i) states:

For all statewide licenses issued to a corporation by the State Comptroller and in each county and Baltimore City, notwithstanding any other provision of this article to the contrary, *a corporation or club holding an alcoholic beverages license* may, during the license year, substitute any or all names of its officers on the license. . . .

(Emphasis added.)

This section makes it quite clear that a corporation indeed can own a liquor license. Technically, the license is issued to the named individuals, but that is in name only. The true result is that the corporation actually owns or "holds" the

license. Similarly, § 10–501(b)(4)(ii) provides: "The licensee shall deliver a copy of the underlying security agreement that is signed *by or on behalf* of the individual *or entity that holds the license.*"[3] Section 10–501(e) provides, in pertinent part: "In Harford County, licenses issued under provisions of this article may not be subject to ... [s]ale or transfer per se, unless the license accompanies the business to which the license was issued." This language indicates that it is the business that owns the license although technically licenses are issued to individuals. The section applies only to Harford County, but is instructive as to the legislative intent of the entire Article.

Section 10–506 is entitled "Death of licensee." Although the licensee technically is the individual, this section further demonstrates the intent of the legislature that this is so in name and form only and not in substance. Section 10–506(b) provides, in pertinent part:

> Notwithstanding any provisions to the contrary in this article, upon the death of any married licensee, or upon the death of any licensee *holding that license for the benefit of a partnership or corporation,* upon application to the Comptroller or local licensing board, as the case may be, that granted the license, a new license shall be issued to the surviving spouse, the surviving partners for the benefit of the partnership, or the senior surviving officer for the benefit of the corporation without the necessity of any further proceedings for the balance of the current license year. A renewal license may be issued to the surviving spouse or to the surviving members of a partnership or corporation, if they qualify to hold license under this article. . . .

(Emphasis added.)

This section once again demonstrates that, in a case involving a business entity, the individual can be issued the license

---

3. Section 10–501(b)(4)(ii) applies only to Prince George's County, but nonetheless is instructive in its demonstration of the intent of the legislature.

in name only, while the true owner or holder of the license may be the business entity.

Section 16–504 also is instructive regarding the legislative intent as it pertains to the instant issue:

> If any fine shall be imposed by any court upon any individual who has obtained a license under the provisions of this article *for or on behalf of any corporation,* partnership, or unincorporated association, the corporation, partnership, or unincorporated association shall also be liable for the payment of such fine; and in case the penalty carries with it imprisonment, that penalty shall be borne by the individual.

(Emphasis added.)

This section further indicates the intent by the legislature that the individual licensee merely obtains the license for the corporation, and thus it is the corporation that holds and owns the license. This section also is instructive regarding the rationale behind the issuance of the license to individuals rather than corporations. The issuance of the license to specific individuals provides criminal responsibility by those individuals in the event such penalty is applicable. If a license were issued only in the name of a corporation it would be difficult to assess criminal responsibility.

Having established the legislative intent pertaining to Article 2B, we look now to case law for further guidance on this issue. Our examination of the applicable case law demonstrates that no definitively instructive case exists regarding this issue, although we find that several cases have implicitly recognized that corporations may own liquor licenses.

In *Comptroller of the Treasury v. Washington Restaurant Group, Inc.,* 339 Md. 667, 664 A.2d 899 (1995), the Court of Appeals held that a state tax lien could be enforced by a writ of execution upon a liquor license. The tax lien pertained to Washington Restaurant Group, Inc. The Court did not address the issue of corporate ownership and remanded the case to the trial court on other grounds. There would have been no need to remand the case, however, if the Court interpreted § 9–101(a) in the manner appellant contends. The Comptroller of

the Treasury had initiated the writ of execution to enforce a tax lien against the corporation. If a corporation is unable to own a liquor license, then the liquor license could not have been the subject of the writ of execution concerning a tax lien against the corporation. Consequently, there would have been no reason for the Court of Appeals to remand the case, as it could have disposed of it summarily.

Similarly, in *Dodds v. Shamer*, 339 Md. 540, 551, 663 A.2d 1318 (1995), the Court of Appeals, citing an insufficient record in the trial court, remanded the case to the trial court to determine the ownership of the liquor license. A writ of execution had been entered against the liquor license to satisfy a personal debt of the licensee arising from his divorce. The licensee contended that the liquor license was not owned by him as the licensee, instead claiming that it was owned by the corporation that owned the business. The Court concluded:

> Mr. Dodds has also contended that the liquor license seized from Harford Road Liquors was not his property and, therefore, could not be executed upon to satisfy his personal debt. The record of the proceedings in the circuit court is insufficient to permit us to reach a determination on this contention. Accordingly, we remand to the circuit court for proceedings consistent with the Maryland Rules to determine the ownership of the license.

*Id.* at 557, 663 A.2d 1318.

We note that if § 9–101(a) prohibited corporate ownership of liquor licenses, then remand for a determination of ownership in *Dodds* would have been unnecessary as the only issue remanded by the Court was whether the license was owned by the corporation or by the individual licensee.

In *Food Lion, Inc. v. McCall*, 122 Md.App. 429, 712 A.2d 581 (1998), this Court held that a corporation could not transfer its liquor license to a chain supermarket because such transfer was prohibited by a statute that applied in Prince George's County. Although this Court did not address directly the issue of corporate ownership, our recitation of the undisputed facts in that case is instructive. We pointed out

that the liquor license was held by Oxon Run, Inc., a closely held Maryland corporation, that sought to transfer the license to Food Lion, Inc., a publicly held corporation. *Id.* at 432, 712 A.2d 581. The facts are instructive in that the license was owned by a corporation, and this fact was not disputed.

The issuance of a liquor license is not necessarily coincident with the ownership thereof when a corporation applies for a license through its officers. In the instant case the individual licensees were issued the license for use by and on behalf of the corporation. The license is held and owned by the corporation for the relevant purposes as they pertain to this case, and therefore the license is not subject to levy by creditors of the individual licensees.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**